NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

AUTUMN R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] P.W., *Appellees*.

No. 1 CA-JV 14-0120
FILED 10-30-2014

---

Appeal from the Superior Court in Maricopa County
No.  JD23048
JS12354
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll, Scottsdale
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Erika Z. Alfred
*Counsel for Appellee Department of Child Safety*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  *See* ARCAP 27.

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

¶1            Autumn R. ("Mother") appeals the juvenile court's order terminating her parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            P.W. was born in July 2009 and initially lived with Mother and Father in Arizona.[2]  In 2010, Father took P.W. to visit his family in New York.  Mother joined them shortly thereafter, remaining for approximately five weeks.  Father decided to stay in New York with P.W., while Mother moved to South Carolina to live with her mother.

¶3            Mother had no contact with P.W. from September 2010 until after learning of the juvenile court proceedings in 2013.  During that time period, she intermittently contacted Father via e-mail but did not visit P.W., write to her, or provide financial support.  At some point, Father returned to Arizona with P.W.  In May 2012, he sought an order requiring Mother to pay child support.  Mother was notified of this action by the South Carolina Child Support Enforcement Division.  She never paid child support, though, and the outcome of the South Carolina proceedings is unclear from the record.

¶4            In December 2012, Father's girlfriend severely burned P.W. by submerging her in scalding water.  Father was jailed in connection with the incident, and DCS took custody of P.W.  DCS could not locate Mother and filed a dependency petition.  In February 2013, DCS filed a severance petition and retained an investigator to ascertain Mother's whereabouts.  Mother received notice of the juvenile court proceedings after the investigator located her in March 2013.

---

2        The juvenile court also terminated Father's parental rights, but he is not a party to this appeal.

**¶5** Mother returned to Arizona in April 2013, and DCS offered her services, beginning with drug testing and counseling.[3] DCS later provided additional services, including a psychological evaluation, a best interest assessment, and therapeutic visitation. Mother underwent two psychological evaluations, one by a psychologist DCS retained, and the other by a psychologist Mother selected. A best-interest assessment took place with P.W. and her foster mother present. Mother failed to participate, despite knowing of the appointment.

**¶6** DCS alleged abandonment under Arizona Revised Statutes ("A.R.S.") § 8-533 as the sole statutory basis for terminating Mother's parental rights. On the first day of trial, DCS sought to introduce a child custody petition Mother had filed in Arizona in 2010. In that petition, Mother asked the court to award Father sole custody of P.W. Mother objected to the document because it had not been disclosed. The court ultimately admitted the exhibit into evidence, as we discuss in more depth *infra*.

**¶7** The juvenile court issued an order terminating Mother's parental rights based on abandonment, and Mother timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235.

## DISCUSSION

### I. Severance Order

**¶8** "To justify termination of the parent-child relationship, the trial court must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S.] section 8-533." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). The court must also find by a preponderance of the evidence that severance is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, 110 P.3d 1013, 1022 (2005). We defer to the factual findings of the juvenile court and will affirm "if substantial evidence in the record supports the juvenile court's ruling." *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93-94, ¶¶ 2-5, 210 P.3d 1263, 1264-65 (App. 2009).

---

[3] The DCS caseworker testified that limited services were offered to Mother initially because she was "very evasive" about whether she would remain in Arizona.

### A.    Abandonment

**¶9**        A prima facie case of abandonment exists when a parent fails "to maintain a normal parental relationship with the child without just cause for a period of six months."  A.R.S. § 8-531(1).  Elements of a normal parental relationship include providing reasonable support, maintaining regular contact, and providing normal supervision for the child.  *Id.*  We measure abandonment by looking at a parent's conduct rather than her subjective intent.  *See Michael J.*, 196 Ariz. at 249, ¶ 18, 995 P.2d at 685.  We will affirm a finding of abandonment "unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing."  *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94, ¶ 7, 210 P.3d 1263, 1265 (App. 2009).

**¶10**        At trial, Mother admitted not supporting or communicating with P.W. for more than two and a half years.  She suggests Father impeded contact with P.W., but it is a parent's responsibility to take concrete steps toward providing a normal parental relationship, even in the face of impediments.  *See Pima Cnty. Juvenile Severance Action No. S-114487*, 179 Ariz. 86, 96, 876 P.2d 1121, 1131 (1994); *see also Michael J.*, 196 Ariz. at 251, ¶¶ 24-25, 995 P.2d at 687 ("The burden to act as a parent rests with the parent, who should assert [her] legal rights at the first and every opportunity.").  Moreover, the juvenile court found copies of emails Mother proffered "neither substantial nor persuasive evidence" of attempts to maintain a normal parental relationship with P.W.  The court further noted that Mother did not pursue custody of P.W., despite knowing her whereabouts from the child support proceedings Father initiated.  Mother's failure to do so, the court ruled, "casts significant doubt on the veracity of Mother's assertions that she exerted significant efforts to re-establish and maintain contact with [P.W.] prior to the commencement of this case."

**¶11**        "Questions of abandonment and intent are questions of fact for resolution by the trial court."  *Yuma Cnty. Juvenile Court Action No. J-87-119*, 161 Ariz. 537, 539, 779 P.2d 1276, 1278 (App. 1989).  We disagree with Mother's suggestion that because she returned to Arizona upon learning of the juvenile court proceedings, she cannot be deemed to have abandoned P.W.  Although post-petition acts are relevant to the best interest analysis, they do not negate a finding of abandonment.  *Maricopa Cnty. Juvenile Action No. JS-500274*, 167 Ariz. 1, 8, 804 P.2d 730, 737 (1990).  Clear and convincing evidence supports the juvenile court's finding of abandonment.

### B.     Best Interests

**¶12**          "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Id.* at 5, 804 P.2d at 734. The court should consider all pertinent factors, including "whether: 1) an adoptive placement is immediately available; 2) the existing placement is meeting the needs of the child; and 3) the [child is] adoptable." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30, 231 P.3d 377, 383 (App. 2010). We view the evidence in the light most favorable to affirming the juvenile court's findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App. 2002).

**¶13**          The juvenile court concluded severance was in P.W.'s best interest because she "is living with a prospective adoptive placement, who provides stability, love and support, and is able to meet all of [her] needs." The court also ruled termination was in P.W.'s best interest because the child would be at risk for further abandonment if returned to Mother's care. The record supports these findings.

**¶14**          Dr. Thal testified Mother, who has four other children, has a "worrisome" pattern of abandoning her children and opined P.W. was at risk of future abandonment by Mother. The DCS caseworker also testified Mother has a pattern of abandoning her children. P.W. is bonded with her foster mother, but lacks a bond with Mother. The foster mother wishes to adopt P.W. Both the case manager and the psychologist who conducted the best interest assessment agreed it was in P.W.'s best interest to remain with her foster mother. The superior court did not err in concluding severance was in P.W.'s best interest.

## II.     Untimely Disclosure

**¶15**          Mother contends admission of the custody petition she filed in 2010 violated disclosure requirements of Rule 44, Arizona Rules of Procedure for the Juvenile Court, as well as her due process right to a fair trial. Rule 44, though, does not compel the imposition of sanctions, but instead permits the court to impose them at its discretion. *See* Ariz. R.P. Juv. Ct. 44(G). Courts have "broad discretion in ruling on disclosure and discovery matters, and this court will not disturb that ruling absent an abuse of discretion." *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14, 296 P.3d 100, 104 (App. 2013).

**¶16**          We find no error. Mother argues she was prejudiced because the document went "to the heart of the matter" and the court

used the exhibit against her. The record, however, does not reflect that the juvenile court relied on the exhibit. Instead, the court cited other substantial evidence in support of its abandonment finding.

¶17 The court also took reasonable steps to mitigate any prejudice arising from the untimely disclosure. It initially declined to permit DCS to use the exhibit, giving Mother and her counsel time to review the document and renew any objection on the second day of trial. The next day, over Mother's continued objection, the court allowed DCS to use the exhibit for impeachment, but did not admit it into evidence. It was only on the final day of trial, which occurred more than four months after the first two days of trial, that the court admitted the exhibit into evidence. In the interim, Mother had ample opportunity to review the document and to account for and address it at trial. She identifies nothing she would have done differently had the document been timely disclosed. Furthermore, the document was one Mother herself authored, undermining any claim of undue surprise. And the only prejudice Mother articulates is the effect of the exhibit on the court, which is due to the document's contents, not the timeliness of its disclosure. On this record, Mother has not shown that she was denied her due process right to a fair trial.

## CONCLUSION

¶18 For the foregoing reasons, we affirm the order terminating Mother's parental rights to P.W.



Ruth A. Willingham · Clerk of the Court
FILED: 10/30/2014