PAULSEN, et al. v. COOMBS, et ux.

No. 7880. Decided February 16, 1953. (253 P. 2d 621.)

See 76 C. J. S., Reformation of Instruments, sec. 84. Ignorance of facts as ground for reformation of contract. 45 Am. Jur., Reformation of Instruments, sec. 47; 137 A. L. R. 908.

*Stewart, Cannon & Hanson, Don J. Hanson* and *Ernest F. Baldwin, Jr.*, Salt Lake City, for appellants.

*Earl P. Staten* and *Allen H. Tibbals*, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment for a balance due on a written contract for carpenter work. Affirmed, the parties to bear their own costs on appeal.

Plaintiffs pleaded the contract and defendants counter-claimed for damages for non-performance, mal-performance and for certain materials furnished by defendants, which, under the terms of the contract, plaintiffs were to supply. By reply, plaintiffs for the first time sought to avoid the materials clause by asserting it was included by mutual mistake, asking reformation for that reason.

Without detailing the voluminous and mostly conflicting evidence, we conclude that there was sufficient substantial evidence to support the trial court's conclusion, the writer, however, differing from the opinion of Mr. Justice CROCK-ETT to the effect that there was a mutual mistake as to a $280.44 item, justifying reformation of the contract pleaded. All other members of the Court agree with Mr. Justice CROCKETT as to that item, hence his opinion that the trial court should be affirmed as to that also is determinative.

The parties read the contract before signing. Its terms were clear and unambiguous. The contract was pleaded and relied on in the complaint *in its entirety.* By answer, defendants claimed the plaintiffs had not furnished the materials mentioned in the contract, for cabinet work in the kitchen, which cabinet fixtures were to be obtained pre-fabricated. It is significant that the requirement to furnish materials was incorporated in only one of the paragraphs of the contract and was applicable only to milled cabinet work to be milled off the premises. It is not unreasonable to assume that plaintiffs, in contracting for an integrated job, would agree to pay for such materials, even though defendants did not assert a claim for such materials until after an argument was precipitated as to who owed whom what. Nevertheless, the plaintiff who signed the contract, after having filed a complaint claiming payment

*under the entire contract,* when confronted with an offset for the materials which the contract said he was to furnish, asserts that he did not notice the word "materials" in the agreement and therefore seeks to exclude the word, over the strenuous protest of the defendants,—and succeeds by the equitable route of reformation in a law action for breach of contract. Without discussing the propriety of or authority for such procedure, it is difficult to perceive how one can arrive at the conclusion that there is clear and convincing evidence for the extraordinary relief by way of reformation, considering the law's policy to lend dignity to written instruments and sanctity to the parol evidence rule.[1] The fact that one is ignorant of the contents of the paper he signs necessarily does not relieve him of contractual liability,[2] and should not do so here. The writer believes that reformation in such case is to lend undue credence to one side of a controverted set of facts, and simply ignores the parol evidence rule.

CROCKETT, Justice (concurring-dissenting).

I concur with the prevailing opinion by Mr. Justice HENRIOD in affirming the main portions of the judgment of the trial court. However, I am also inclined to the view that there is "clear and convincing evidence" that there was a mutual mistake with respect to the item of $280.44 for materials as found by the trial court and that the judgment should be affirmed in toto.

The only way to evaluate the evidence is to briefly review it. Defendant Kenneth E. Coombs was acting as his own contractor in building a home. He let a contract to Paulsen for the carpenter work, which included numerous separate items. One of these related to cabinet work in the kitchen, which was described in paragraph 6 of the

---

[1]*George* v. *Fritsch Loan & Trust Co.,* 69 Utah 460, 256 P. 400.

[2]Williston, Contracts, Rev. Ed., Vol. 1, § 90A, p. 257; *Larsen* v. *Oregon Short Line Railroad Co.,* 38 Utah 130, 110 P. 983.

written contract. With respect to that paragraph only, the contract provided that Paulsen should furnish "the labor *and materials.*" (Emphasis added.) The value of such materials was stipulated to be $280.44.

The trial court concluded that the words "and materials" were inserted in the contract by inadvertence or mistake and that Paulsen was not obligated to furnish them. A survey of all of the evidence seems to indicate quite clearly that he was right.

As noted in the prevailing opinion, even the defendants themselves claimed nothing for these materials until after dispute had arisen concerning major items in the contract.

The only evidence in the record that the parties knew the words "and materials" were in paragraph 6 and that the parties intended Paulsen should furnish the material for the cabinet work was the testimony of the defendant Kenneth E. Coombs himself. All of the other evidence and the circumstances shown argue most definitely that the parties did not know of this provision in the contract and that they had no such intention at the time the contract was made.

The foregoing statement is based on the following:

1. The defendants' original answer filed February 20, 1952 in response to Paulsen's complaint seeking compensation for the carpenter work, merely denied that Paulsen had performed the contract; no specific contention was made that Paulsen should have furnished materials or that he had failed to do so; in fact the word "materials" was not even mentioned.

2. Demand for trial was filed February 20, 1952 and shortly thereafter a pretrial conference was had at which there was considerable discussion of the issues of the case and defendant made no mention that Paulsen either was supposed to or had failed to furnish such materials.

3. It was not until just shortly before the trial commenced (some uncertainty exists) on April 28, 1952 that the defendants filed a notice that they would move the court for permission to amend the answer, adding a set-off and counterclaim amounting to $3121.18, which included this item for materials. Both the court and opposing counsel expressed surprise at the injection of a counterclaim at that stage of the case, but after considerable discussion it was agreed that the pleadings would be amended and the trial go forward as planned.

4. The evidence is uncontradicted that when Coombs talked to Paulsen, the only subject they discussed and the only thing Paulsen was asked to bid on was the carpenter work; there was no discussion whatsoever of the subject of materials. There was no evidence to refute this; not even Coombs was willing to say that he ever talked to Paulsen about furnishing the materials or requested him to bid on them.

5. After the conversations, Coombs made pencilled notes concerning the carpenter work; took them to Johnson, the architect for Coombs, in whose office the agreement was typed up. In response to the question as to how the phrase "labor and materials" occurred in paragraph 6, Johnson responded:

"Very likely * * * the stenographer * * * was used to typing all specifications and contracts from reference to the labor and materials as a tied-together phrase, as a common phrase"

and further

"It [the phrase] appears in the standard forms * * * as prepared in the American Institute of Architects."

6. When asked if he did not read the contract, Paulsen stated:

"A. Well I glanced through it but I evidently missed that one paragraph."

I concede that reasonable care may have required him to read it and be charged with knowledge of its contents if all of the other evidence in this case did not show so conclusively the mistake of both parties.

7. Roy Johnson, the architect hired by Coombs, testified positively that Paulsen was to bid on the labor only. He stated: "I know that he [Paulson] was not asked to bid on material." Johnson further testified that in his opinion it would not have been possible for Paulsen to make a bid upon furnishing such materials without a copy of the specifications and also testified "that he never did furnish him [Paulsen] a copy of the specifications  *  *  *."

8. It is also undisputed that Paulsen had nothing whatsoever to do with the selection of the materials, nor of the place they were to be purchased, nor of ordering or paying for them. Coombs attended to all of this and paid for the materials without informing Paulsen anything about it, even as to the price he had paid.

From the foregoing it seems clear beyond doubt that there was never any intention that Paulsen would furnish these materials but that after controversy arose concerning other important matters pertaining to the contract Coombs discovered the words "and materials" in paragraph 6 and sought to bind Paulsen to it.

I am entirely in accord with the principle of preserving the sanctity of written contracts, but this applies only when the contract represents the intent of the parties. Where errors occur, clerical, typographical or otherwise, of course, a contract can be reformed to show the true intent of the parties.[3] In order to prove such mistake and avoid the effects of the written contract, the evidence must be clear and convincing; that is, it must be

[3] 76 C. J. S., Reformation of Instruments, § 25(h).

such that there is no serious nor substantial doubt what the true intent is.[4]

The question of whether evidence is sufficient to be clear and convincing is primarily for the trial court; his finding should not be disturbed unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing.[5] ■

It thus appears to me that the evidence points inescapably to the fact that the parties did not intend that Paulsen should furnish these materials and that the trial court was correct in so concluding. I would affirm the judgment as it was entered by him.

WOLFE, C. J., and McDONOUGH and WADE, JJ., concur in the opinion of Mr. Justice HENRIOD, except as modified by the concurring-dissenting opinion of Mr. Justice CROCKETT, in which they also concur.

[4]*Greener* v. *Greener,* 116 Utah 571, 212 P. 2d 194; *Kirchgestner* v. *Denver & R. G. W. R. Co.,* 118 Utah 37, 233 P. 2d 699.

[5]*Northcrest, Inc.,* v. *Walker Bank & Trust Co.,* 122 Utah 268, 248 P. 2d 692.