IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY 26 2009

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| DENISE R., | ) | |
| | ) | |
| Appellant, | ) | 2 CA-JV 2009-0003 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | O P I N I O N |
| ARIZONA DEPARTMENT OF | ) | |
| ECONOMIC SECURITY, | ) | |
| DRAVEN R., and LARSEN R., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 18445500

Honorable Virginia C. Kelly, Judge

AFFIRMED

---

Joan Spurney Caplan                                                         Tucson
                                                         Attorney for Appellant


Terry Goddard, Arizona Attorney General
  By Dawn R. Williams                                                       Tucson
                                            Attorneys for Appellee Arizona
                                         Department of Economic Security

---

E C K E R S T R O M, Presiding Judge.

**¶1** After Denise R. failed to appear for a December 2008 initial termination hearing, the juvenile court terminated her parental rights to her eleven-year-old son, Draven, and her six-year-old daughter, Larsen, based on findings that Denise suffered from disabling mental illness or chronic alcohol abuse, *see* A.R.S. § 8-533(B)(3), and had substantially neglected or willfully refused to remedy the circumstances causing the children to remain in a court-ordered, out-of-home placement for more than nine months. *See* § 8-533(B)(8)(a). On appeal, Denise maintains the Arizona Department of Economic Security (ADES) failed to present clear and convincing evidence that mental illness or substance abuse rendered her unable to discharge her parental responsibilities. *See* § 8-533(B)(3). She also argues § 8-533(B)(8)(a) is unconstitutionally vague, in violation of the Due Process Clause of the United States Constitution. Because we find there was sufficient evidence for the juvenile court to terminate Denise's parental rights pursuant to § 8-533(B)(3), we need not consider her claim that § 8-533(B)(8)(a) is constitutionally infirm. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 3, 53 P.3d 203, 205 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").[1]

---

[1]For this reason, we need not address ADES's suggestion we deny review of Denise's constitutional claim for the additional reason that she failed to raise it below. *See, e.g.*, *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, ¶ 21, 153 P.3d 1074, 1081 (App. 2007) ("We generally do not consider [claims] raised for the first time on appeal.").

**Standard of Review**

¶2 The parties devote considerable argument to the standard of review we must apply to Denise's claim of insufficient evidence. A juvenile court's termination order must be supported by clear and convincing evidence or, in other words, evidence that makes the proposition to be proved "'highly probable or reasonably certain.'" *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 25, 110 P.3d 1013, 1018-19 (2005), *quoting Black's Law Dictionary* 577 (7th ed. 1999). Denise acknowledges we must affirm if substantial evidence in the record supports the juvenile court's ruling but maintains the evidence must have been such that "a reasonable mind" could find it clear and convincing. Relying on *In re Maricopa County Juvenile Action No. JS-4130*, 132 Ariz. 486, 647 P.2d 184 (App. 1982), ADES disputes Denise's contention and argues we should review the juvenile court's findings only to determine whether they were based on reasonable—not substantial—evidence and without regard for whether the quantum of evidence was clear and convincing.

¶3 In *Maricopa County No. JS-4130*, Division One of this court suggested, in dicta, that we do not "apply different standards of review depending on the burden of proof required for the particular proceeding." The court stated:

> If an appellate court were to apply different standards of review depending on the burden of proof required for the particular proceeding, it would be substituting its resolution of factual issues for that of the trier of fact. Therefore, no matter what the burden of proof required in the proceedings below, we can only review the evidence to determine if there is substantial evidence to support the conclusion of the trier of fact.

*Id.* at 488, 647 P.2d at 186.

3

**¶4**      We agree that a single, deferential standard of review applies to any claim of insufficient evidence, although that standard has been expressed in various ways. Thus, we will affirm a lower court's findings of fact "so long as they are supported by reasonable evidence," *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 10, 63 P.3d 282, 285 (2003); if "substantial evidence exists to support the trial court's action," *In re Estate of Pouser*, 193 Ariz. 574, ¶ 13, 975 P.2d 704, 709 (1999); "where there is evidence from which a reasonable [person] could draw the same conclusions," *Bass Inv. Co. v. Banner Realty, Inc.*, 103 Ariz. 75, 79, 436 P.2d 894, 898 (1968), or "if any reasonable construction of the evidence justifies the decision." *Stevenson v. Stevenson*, 132 Ariz. 44, 46, 643 P.2d 1014, 1016 (1982).

**¶5**      We also agree with the state that our review does not entail consideration of whether the evidence was, in our opinion, clear and convincing. *See Jesus M.*, 203 Ariz. 278, ¶ 12, 53 P.3d at 207 (reviewing court does not reweigh evidence); *In re Pima County Juv. Action No. S-2698*, 167 Ariz. 303, 307, 806 P.2d 892, 896 (App. 1990) (reviewing court does not substitute its assessment of evidence for trial court's). But, to the extent ADES or *Maricopa County No. JS-4130* suggests the standard of proof is irrelevant to our review, we must disagree.

**¶6**      In considering a claim of insufficient evidence, "[o]ur duty, on appeal, begins and ends with the inquiry whether the trial court had before it evidence upon which an unprejudiced mind might reasonably have reached the same conclusion." *Murillo v. Hernandez*, 79 Ariz. 1, 9, 281 P.2d 786, 791 (1955); *see also Estate of Pouser*, 193 Ariz. 574, ¶ 13, 975 P.2d at 709 ("substantial evidence" required to affirm "is evidence which would

4

permit a reasonable person to reach the trial court's result"). But, because the requisite standard of proof is inherent in a court's finding, this inquiry requires us to consider whether a reasonable person would have reached the same conclusion when bound by the same evidentiary standard that constrained the court's deliberations.

¶7     Accordingly, as our supreme court has repeatedly concluded, a decision that must be based on clear and convincing evidence will be affirmed "'unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing.'" *Murillo*, 79 Ariz. at 9, 281 P.2d at 791, *quoting Paulsen v. Coombs*, 253 P.2d 621, 624 (Utah 1953); *see also Stevenson v. Stevenson*, 132 Ariz. 44, 46, 643 P.2d 1014, 1016 (1982) (same); *King v. Uhlmann*, 103 Ariz. 136, 142, 437 P.2d 928, 934 (1968) (same); *cf. State v. Cox*, 217 Ariz. 353, ¶ 22, 174 P.3d 265, 269 (2007) (court reviewing claim of insufficient evidence in criminal case must ask if reasonable factfinder could have found evidence sufficient to prove defendant guilty beyond reasonable doubt), *citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Tison*, 129 Ariz. 546, 553, 633 P.2d 355, 362 (1981) (Arizona's "substantial evidence test" in criminal cases consistent with review required by *Jackson*).

¶8     In *Jackson*, the Supreme Court held that, because due process requires proof beyond a reasonable doubt to convict a criminal defendant, due process also requires a reviewing court to assess "whether the evidence is constitutionally sufficient" in light of that evidentiary standard. *Jackson*, 443 U.S. at 319-20 & 319 n.13. Because due process similarly dictates the standard of proof for termination decisions, the same reasoning applies here. *See Santosky v. Kramer*, 455 U.S. 745, 748 (1982) ("[D]ue process requires that the

5

State support its allegations [in parental termination proceedings] by at least clear and convincing evidence."); *In re Pima County Juv. Action No. S-919*, 132 Ariz. 377, 377, 646 P.2d 262, 262 (1982) (acknowledging *Santosky* as binding in Arizona); *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 110, 120 (1996) (while United States Constitution does not guarantee right to appeal termination of parental rights, if state provides appeal it must comport with equal protection and due process).

¶9 Moreover, notwithstanding language in *Maricopa County No. JS-4130* that might suggest otherwise, *see* 132 Ariz. at 488, 647 P.2d at 186, reviewing the sufficiency of the evidence in the context of the relevant standard of proof does not require that we substitute our view of the facts for the juvenile court's. As the Supreme Court explained in *Jackson*, the inquiry, as required in criminal cases, "does not require a [reviewing] court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,'" but "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 318-19, *quoting Woodby v. Immigration & Naturalization Svc.*, 385 U.S. 276, 282 (1966).

¶10 We appreciate that, as a practical matter, we may seldom be required to distinguish evidence that could support a finding under a preponderance standard but is insufficient to support the same finding under a clear and convincing standard. Nonetheless, we conclude our standard of review for orders terminating parental rights, while deferential, must reflect the requirement that grounds be proven by clear and convincing evidence. *See*

6

*Beeler v. Am. Trust Co.*, 147 P.2d 583, 600 (Cal. 1944) (Traynor, J., dissenting) (if rule requiring clear and convincing evidence is sound, appellate court errs in declining to enforce it); *see also In re B.D.-Y.*, 187 P.3d 594, 606 (Kan. 2008) (joining "growing number of jurisdictions" to require standard of review that incorporates factfinder's evidentiary standard for termination decisions; collecting cases). Accordingly, we restate what we believe has always been the standard of review in Arizona: We will review a juvenile court's termination order in the light most favorable to sustaining the court's decision and will affirm it "'unless we must say as a matter of law that no one could reasonably find the evidence [supporting statutory grounds for termination] to be clear and convincing.'" *Murillo*, 79 Ariz. at 9, 281 P.2d at 791, *quoting Paulsen*, 253 P.2d at 624.

### Evidence Supporting Termination Under § 8-533(B)(3)

¶11 To terminate a parent's rights pursuant to § 8-533(B)(3), a juvenile court must find by clear and convincing evidence "[t]hat the parent is unable to discharge parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Denise does not challenge the sufficiency of the evidence proving she suffered from mental illness or chronic alcohol abuse that would probably continue for a prolonged, indeterminate period. Nor does she dispute the court's authority to consider her failure to appear as an admission of the factual allegations in the motion for termination. *See* Ariz. R. P. Juv. Ct. 65(C)(6)(c), 66(D)(2). Instead, relying on *Manuel M. v. Arizona Department of Economic Security*, 218

7

Ariz. 205, 181 P.3d 1126 (App. 2008), Denise maintains that, even deeming the allegations in the motion to be true, nothing in the record of these proceedings constitutes clear and convincing evidence that she was unable to parent effectively.[2]

¶12 We cannot agree. Based on the allegations in ADES's motion and reports prepared by Child Protective Services (CPS) workers, this family first came to the attention of CPS after a Pima County sheriff's deputy found then-ten-year-old Draven walking alone approximately two miles from home. Draven told the deputy he had left home because Denise and his stepfather were arguing and making him feel upset and afraid.[3]

¶13 When Denise arrived to take Draven home, she explained to the deputy that her black eye and scrapes on her arm were the result of a recent fight with her husband. Denise also appeared inebriated. When the deputy learned she had driven to get Draven, he administered a breathalyzer test that indicated Denise had an alcohol concentration of .16.[4]

---

[2]In *Manuel M.*, we concluded a "parent admits only the factual contentions contained in the [termination] motion" by failing to appear at a termination hearing and, thus, "a parent's failure to appear does not relieve the juvenile court of its obligation to assess the 'record and evidence' presented and to determine whether the state has proven a statutory ground for termination by clear and convincing evidence." 218 Ariz. 205, ¶¶ 23, 28, 181 P.3d at 1133, 1134. We further concluded that "exhibits that had been duly admitted at prior [dependency] hearings were part of the record and thus properly considered by the court" at termination. *Id.* ¶ 34; *see also Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, ¶ 23, 158 P.3d 225, 231-32 (App. 2007) (same).

[3]Draven later told a CPS investigator that Denise had been drinking and had been angry with him as well and that he had left after Denise told him to "get out of the house."

[4]According to the report CPS prepared for the preliminary protective hearing, the deputy did not charge Denise with driving under the influence of an intoxicant on this occasion, despite the evidence of her intoxication, because he had not seen her operating a vehicle.

¶14        After an initial investigation, CPS allowed Draven and Larsen to remain with Denise and provided in-home services to the family. Almost two months later, however, a CPS case manager and a counselor were standing at the door, waiting to conduct a home visit, when they heard Denise inside, screaming at the children. The case manager smelled alcohol on Denise's breath when she answered the door, and Denise had seemed intoxicated, "often unable to complete a thought," during the home visit that followed. Concerned that Denise was unable to safely parent her children, CPS removed them from her care and placed them with her parents, where they remained throughout this proceeding.[5]

¶15        After taking custody of the children, CPS investigated further and learned Denise was out of compliance with the terms of probation imposed after a 2006 conviction for driving under the influence of an intoxicant (DUI). Denise reported she used alcohol as a means of self-medication for depression. Others reported that her drinking often coincided with physical fights with her husband and arguments with Draven and that she had allowed her husband's fifteen-year-old son to drink alcohol in the home with her. Draven and Larsen were adjudicated dependent in January 2008 after Denise admitted the allegations in an amended dependency petition. The allegations included her history of alcohol abuse; ongoing domestic violence between her and her husband, witnessed by her children; her psychiatric diagnosis of dysthymia and alcohol dependence; and an incident in August 2007 when she had

_____

[5]CPS also took custody of Denise's twin daughters, who were thirteen months old at the time. Neither the twins nor any of the children's fathers are subject to the termination order from which Denise appeals.

rendered herself unconscious by ingesting a combination of alcohol, an antidepressant, and an antihistamine.

¶16        The CPS case plan approved for Denise listed continuing, monitored sobriety as one of the "behavioral change(s) required to address the safety threats and risks identified." And evaluating psychologist Lorraine Rollins, who diagnosed Denise as suffering from chronic alcohol abuse and a depressive disorder, expressed concern that Denise's alcohol abuse may have caused her to abuse her children emotionally. Rollins opined the children would remain at risk for neglect and abuse in the future to the extent Denise continued to abuse substances or be depressed.

¶17        Denise participated only minimally in the services CPS offered her, and when she complied with drug testing, the samples she provided were frequently positive for alcohol. In May 2008, she discontinued counseling services, stopped taking prescribed antidepressants, and was also charged with DUI and driving with a suspended license.[6] By the time of the October 2008 permanency hearing, Denise had continued to test positive for alcohol and, during the year-long dependency proceeding, had never managed to stay sober for longer than two weeks. CPS case manager Jennifer Wiley reported Denise's tendency when intoxicated to engage in unsafe or destructive behaviors, as evidenced by her history of DUI convictions. Wiley opined Denise's alcohol use impaired her ability to parent and subjected the children

---

[6]This arrest was resolved by Denise's plea of guilty to felony endangerment and misdemeanor DUI. She was sentenced to thirty days in jail followed by probation, and she was incarcerated, on work-release status, on the day of the termination hearing.

to a substantial risk of harm. The juvenile court agreed and ordered ADES to file a motion to terminate Denise's parental rights.

¶18 At the termination hearing, Wiley testified Denise "has not worked her case plan and is not at a point where she would be able to have the children reunified with her." In reviewing the evidence, the juvenile court noted the deputy sheriff's discovery of Draven miles from his home in September 2007 was "a serious act of neglect" but found that act alone did not warrant termination of Denise's parental rights for abuse or neglect, one of the grounds ADES had alleged. *See* § 8-533(B)(2). But the court also found ADES had proven grounds pursuant to § 8-533(B)(3) and (8)(a), observing that Denise had suffered from alcoholism "for a long time" but had been unable to address the issue during the dependency proceeding.

¶19 Although Denise argues ADES presented no evidence that Draven and Larsen were "dirty, unfed, poorly clothed, [or] sick," we have never held the parental responsibilities addressed in § 8-533(B)(3) are limited to any exclusive set of factors; rather, they refer to "'those duties or obligations . . . a parent has with regard to his child,'" which may depend upon context. *In re Maricopa County Juv. Action No. JS-5894*, 145 Ariz. 405, 408-09, 701 P.2d 1213, 1216-17 (App. 1985), *quoting In re Maricopa County Juv. Action Nos. JS-5209 & JS-4693*, 143 Ariz. 178, 185, 692 P.2d 1027, 1035 (App. 1984). In addition to a parent's responsibility to provide a child with "food, shelter, and medical attention," *Maricopa County Juv. Nos. JS-5209 & JS-4963*, 143 Ariz. at 185, 692 P.2d at 1034, there is also the duty to provide a child with "good physical care and emotional security," *In re Maricopa County Juv. Action No. JD-561*, 131 Ariz. 25, 28, 638 P.2d 692, 695 (1981), and "parental guidance and

11

control," *In re Maricopa County Juv. Action Nos. JS-1308 & JS-1412*, 27 Ariz. App. 420, 422, 555 P.2d 679, 681 (1976).

**¶20**        The evidence in this record, viewed in the light most favorable to sustaining the juvenile court's order, *Jesus M.*, 203 Ariz. 278, ¶ 13, 53 P.3d at 207, is more than sufficient to establish Denise was unable to effectively parent Draven and Larsen as a result of her abuse of alcohol and her related depression. We conclude a reasonable person could find it highly likely that Denise's continuing abuse of alcohol seriously threatened her children's emotional and physical security. Finding substantial evidence supported the termination of Denise's parental rights pursuant to § 8-533(B)(3), we affirm the juvenile court's termination order.[7]

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
GARYE L. VÁSQUEZ, Judge

---

[7] Denise does not challenge the juvenile court's finding that termination of her parental rights was in the best interests of the children.