NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

FATEAMA M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.B., *Appellees.*

No. 1 CA-JV 16-0024
FILED 10-13-2016

---

Appeal from the Superior Court in Apache County
No. S0100JD201500010
The Honorable C. Allan Perkins, Judge *Pro Tempore*

**VACATED AND REMANDED**

---

COUNSEL

Williams Law Group, Show Low
 By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge John C. Gemmill[1] delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

**G E M M I L L**, Judge:

¶1            Fateama M. ("Mother") appeals the juvenile court's order adjudicating her child, J.B., dependent as to her on the basis of neglect due to mental illness.  For the following reasons, we vacate the juvenile court's ruling and remand for dismissal of the dependency petition.

## BACKGROUND

¶2            On June 25, 2015, the Department of Public Safety ("DPS") found Mother and J.B. stranded on Interstate 40, near the Petrified Forest National Monument.  The two were on their way from Texas back to California, where Mother resides, when Mother's car broke down.  They were stranded for at least two days with little food or water.

¶3            While assisting Mother, DPS officers observed a series of unusual behaviors.  Mother acted paranoid, was uncooperative with DPS personnel and a tow truck driver, and did not allow DPS to give her or J.B. food or water.  Mother did not allow the DPS officer to tow her car to a service station, but instead demanded they drop the car at a nearby gas station.  Mother further refused to drink or allow J.B. to drink from water bottles offered by a Park Ranger because she believed the water was poisoned.  Mother also denied a DPS officer's request that she let J.B. out of the car so that he would not become too hot.

¶4            Because of Mother's behavior, DPS requested the help of emergency medical personnel.  Title 36[2] proceedings were initiated, and Mother was admitted to Pineview Hospital for an involuntary mental health evaluation.  Mother was discharged from Pineview on June 29, 2015.  At discharge, Mother received a letter from Dr. A. Henri Moyal stating "she

---

[1]      The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]      *See* Arizona Revised Statutes ("A.R.S.") section 36-501, et seq.

had become suddenly very acutely confused, and very likely her unusual state of mind has a lot to do with a severe blood chemistry imbalance." J.B. was taken into Department of Child Safety ("DCS") custody, and DCS filed a dependency petition alleging neglect on the part of Mother.

**¶5** A dependency hearing was held on two separate days in September and October 2015. At the conclusion of the evidence, the juvenile court found DCS had proven by a preponderance of the evidence that the allegations in the petition were true. The court ruled J.B. dependent as to Mother on the ground of neglect due to mental illness, and Mother timely appeals. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1) and -2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 103(A).

## ANALYSIS

**¶6** A child is dependent when he "has no parent or guardian . . . willing to exercise or capable of exercising" proper and effective parental care. A.R.S. § 8-201(15)(a)(i). Mother offers two reasons why the juvenile court erred by finding J.B. dependent. She argues the juvenile court's decision was not based on circumstances as they existed at the time of the adjudication, but on circumstances as they existed at the time of J.B.'s removal. *See Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016). Mother also argues the evidence presented at the dependency hearing was insufficient to form a factual basis for a dependency finding.

**¶7** We review the juvenile court's ruling for an abuse of discretion, and we accept the juvenile court's findings of fact "unless no reasonable evidence supports" them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## I. Basis of Dependency Finding

**¶8** Mother argues the juvenile court's ruling relied solely on the circumstances of J.B.'s removal on June 25 rather than the circumstances at the time of the hearing. She contends the ruling is therefore inappropriate because it articulated the "wrong moment in time when the dependency must be found." *See Shella H.*, 239 Ariz. at 51, ¶ 17.

**¶9** When it ruled J.B. dependent on October 1, 2015, at the end of the two-day hearing, the juvenile court made the following statements:

> Again, the issue is, did the state prove by a preponderance of the evidence that you *suffered* from a mental illness, and

secondly, that because of that, your son *was neglected*. And neglect means unable or unwilling to provide the care needed.

My answer, my ruling is that *on the 25th of June, and for several days following that,* by a preponderance of the evidence, the state has proven its case and, thus, I will find [J.B.] dependent.

(Emphasis added.)

We agree with Mother that the court erred by focusing on past events, because a dependency adjudication must be "based upon the circumstances existing at the time of the adjudication hearing" and not merely on past circumstances. *See id.* at 50, ¶ 12; *see also* A.R.S. § 8-201(14)(a)(i) (defining a dependent child in the present tense as one who "*has* no parent or guardian, or one who *has* no parent or guardian willing to exercise or capable of exercising such care and control") (emphasis added); A.R.S. § 8-201(14)(a)(iii) (defining a dependent child in the present tense as one whose "home *is* unfit by reason of abuse, neglect, cruelty or depravity by a parent") (emphasis added). Based on our review of the record, we agree with Mother that the basis for the juvenile court's ruling was Mother's behavior during *past* events—"on the 25th of June, and for several days following that"—rather than her current condition at the conclusion of the hearing on October 1.

## II.     Sufficiency of the Evidence

**¶10**        DCS argues that notwithstanding any error in the timeframe articulated by the juvenile court's ruling, there was "reasonable evidence" to prove Mother's inability or unwillingness to parent J.B. at the time of the hearing. *See Shella H.*, 239 Ariz. at 51, ¶ 17 (upholding a dependency adjudication that "articulated the wrong moment in time when the dependency must be found" because it was still supported by "objectively sufficient" evidence of a continuing potential threat of regularly occurring domestic violence).[3]    A dependency adjudication requires proof by a preponderance of the evidence.  A.R.S. § 8-844(C)(1).  Because Mother argues against the sufficiency of the evidence supporting the juvenile court's ruling, this court must determine whether the ruling was based on

---

[3]       This court need not determine if it agrees with the "objectively sufficient" harmless error standard posited by the court in *Shella H*.  Even assuming the "objectively sufficient" approach is applicable here, the result remains the same.

"substantial evidence." *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93–94, ¶ 4 (App. 2009).

¶11 After reviewing the evidence presented at the hearing, we conclude that the juvenile court did not have substantial evidence to support its dependency adjudication when properly focused on Mother's condition at the time of the hearing. First, the only testimony from a medical or mental health professional came from Dr. Aaron Moyal, who treated Mother during her stay at Pineview Hospital. Dr. Moyal testified that Mother's mental instability at the time of the incident was acute rather than ongoing. Although there was evidence that Mother did not take or may have delayed in taking the psychotropic medication Dr. Moyal prescribed to her upon discharge, Dr. Moyal indicated that he could not conclude that Mother's failure to do so would cause her to decompensate or become incapable of parenting.[4] Second, although the juvenile court heard testimony from several DCS case workers who had worked with Mother after the roadside incident, none of the case workers testified as to Mother's mental condition at the time of the hearing. Despite Mother's ongoing, twice-weekly supervised visits with J.B., testimony from DCS was essentially limited to interactions with her that occurred well before the hearing took place.[5] The events surrounding June 25 are contextually important and support the initial decision to remove J.B. from his Mother's care at that time, but the issue presented in this appeal is whether the evidence was sufficient to support a determination of dependency as of the time of the hearing. *See Shella H.*, 239 Ariz. at 50, ¶ 12 ("DCS concedes on appeal that the court must determine whether a child is dependent based upon the circumstances existing at the time of the adjudication hearing.").

¶12 Furthermore, the juvenile court itself concluded that it did not know, and in fact *nobody* knew, whether the mental instability that existed at the time of the roadside incident still existed at the time of the hearing:

> [T]he state has proven its case and, thus, I will find [J.B.] dependent.

---

[4] Mother testified that she filled the prescription on July 13, 2015.
[5] Similarly, in the juvenile court's February 2016 formal order of dependency, nearly all of the factual findings cited in support of the court's dependency adjudication were based on the events surrounding the roadside incident.

> My problem is I don't know if those conditions [that existed at the time of the incident] exist today. The state doesn't know. Nobody knows.

Such a statement is inconsistent with a ruling that Mother's current situation warranted an adjudication of dependency. And, because the only evidence provided by a medical or mental health professional indicated that Mother's initial instability was an acute, rather than an ongoing condition, the State did not present sufficient evidence to establish that Mother's mental instability was ongoing at the time of the hearing. Accordingly, the State did not meet its burden of proving that Mother was incapable of parenting due to mental illness. *See* Ariz. R.P. Juv. Ct. 55(C) ("The petitioner must prove the allegations in the petition by a preponderance of the evidence.").

## CONCLUSION

**¶13** On this record, we cannot conclude that the juvenile court's ultimate conclusion was supported by substantial evidence. *See Denise R.*, 221 Ariz. at 93–94, ¶ 4. We therefore vacate the juvenile court's finding of dependency and remand for dismissal of the petition.



AMY M. WOOD • Clerk of the Court
FILED: AA