NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TOVAH K., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.S., N.S., *Appellees*.

No. 1 CA-JV 16-0449
FILED 6-22-2017

Appeal from the Superior Court in Maricopa County
No. JS18552
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

---

D O W N I E, Judge:

¶1            Tovah K. ("Mother") appeals from an order terminating her parental rights.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2            Two of Mother's children are at issue in these proceedings: S.S., born in November 2013, and N.S., born in December 2015.   The Department of Child Safety ("DCS") took custody of S.S. shortly after her birth, after hospital personnel reported that Mother called S.S. "it," yelled at the infant and told her to "shut up," and engaged in other conduct leading to concerns about the newborn's safety.   DCS began providing services with a goal of family reunification.

¶3            In April 2015, DCS petitioned to terminate Mother's parental rights to S.S., alleging S.S. had been in an out-of-home placement for more than 15 months, the circumstances warranting the out-of-home placement had not been remedied, and there was a substantial likelihood Mother would be unable to exercise proper and effective parental control in the near future.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c).   A severance trial was set for February 2016.

¶4            In January 2016, DCS took custody of N.S. based on mental health and safety concerns.  The severance trial for S.S. was continued to July 2016.  In June, DCS petitioned to terminate Mother's parental rights to N.S., alleging she was unable to discharge her parental responsibilities due to mental illness.  *See* A.R.S. § 8-533(B)(3).

¶5            After a severance trial regarding both children, the juvenile court issued an order terminating Mother's parental rights.[1]     Mother

---

[1]     The children's father's rights were also terminated, but he is not a party to this appeal.

timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

**DISCUSSION**

**¶6** Mother contends substantial evidence does not support the order terminating her parental rights. We disagree.

**¶7** Parental rights may be terminated if the court finds any one of the enumerated grounds under A.R.S. § 8-533(B) by clear and convincing evidence.[2] A.R.S. § 8-537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 280, ¶ 1 (2005). We view the evidence in the light most favorable to sustaining the severance order and will affirm unless there is no reasonable evidence to support it. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81–82, ¶ 13 (App. 2005).

**I. Fifteen Month Out-of-Home Placement (S.S.)**

**¶8** To terminate parental rights under A.R.S. § 8-533(B)(8)(c), the court must find the child has been in an out-of-home placement for 15 months or longer, and despite diligent efforts to provide reunification services, "the parent has been unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." Section 8-533(B)(8)(c)'s reference to "circumstances" means "those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96 n.14, ¶ 31 (App. 2009).

**¶9** At the outset of the proceedings, Mother acknowledged she had been diagnosed with depression and bipolar disorder but had discontinued taking prescribed medication because she disliked the side effects. At her first individual counseling session in March 2014, Mother was "angry, confrontational, belligerent, and combative." She was "shouting and screaming at the top of her lungs." When the session

---

[2] The court must also find by a preponderance of the evidence that termination is in the children's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Because Mother has not challenged the juvenile court's best interests findings, we do not address that requirement. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004) (claims not raised in an opening brief are waived).

ended, the therapist threatened to call police because Mother would not leave. When Mother did leave, she kicked the door on her way out. Mother's angry outbursts continued throughout the case,[3] including:

- During an October 2014 meeting, Mother became so angry that security was summoned to remove her. She "[slammed] her chair back" against the wall as she left.

- In June 2015, Mother threatened to punch her therapist in the face.

- In March 2016, when discussing the cleanliness of her home, Mother began yelling and refused visits in the DCS office, saying, "Fuck it take [the children] cause I'm not going . . . ."

- In April 2016, Mother stated she had "a stupid people problem" not an anger management problem.

- In late April 2016, Mother told a parent aide, "you should not be telling me how to be a parent or how to keep my house clean [because] I know more than you and can parent better than you."

¶10 Mother also had continuous issues with her case managers and parent aides. The current case manager testified she is afraid of Mother and felt unsafe around her due to her anger and abusive behavior. Mother required two parent aides because the aides were afraid to be alone with her.

¶11 Although individual counseling with anger management was offered three times, Mother did not consistently participate until January 2016. Her counselor at the time of the severance trial — Daniel Huyser — testified that Mother made "some real progress" in managing her anger, but admitted he had not read the therapy or parent aide records. Based on his "limited interaction," Huyser testified there was no indication Mother would be a danger to her children. The juvenile court rejected Huyser's opinion, finding it "directly contrary to the evidence of documented anger incidents." *See Jordan C.*, 223 Ariz. at 93, ¶ 18 (The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts.").

---

[3] Mother testified she did not remember several of these episodes, but admitted she has trouble remembering once she gets "in a rage."

¶12        Reasonable evidence supports the conclusion that Mother was unable to remedy the circumstances that brought S.S. into care more than 15 months earlier and that there was a substantial likelihood she would be incapable of exercising proper and effective parental care and control in the near future.

## II.    Mental Illness (N.S.)

¶13        The court may terminate parental rights if it finds a parent is "unable to discharge parental responsibilities because of mental illness" and "there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."   A.R.S. § 8-533(B)(3); *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 11 (App. 2009). Terminating parental rights based on mental illness does not require proof that the parent is incapable of exercising *any* parental responsibilities.  *In re Maricopa Cty. Juv. Action No. JS-5894*, 145 Ariz. 405, 408 (App. 1985).  The court instead has "flexibility in considering the unique circumstances of each termination case before determining the parent's ability to discharge his or her parental responsibilities."  *Id.* at 409.

¶14        Mother underwent a psychological evaluation by Dr. DiBacco and a psychiatric evaluation by Dr. Rosengard.  Dr. DiBacco testified that Mother's long-term depression could be debilitating and her anxiety could "compromise her functioning," rendering her "emotionally and physically unavailable to parent the children."  He opined that Mother had "just begun the journey" toward significant behavioral changes and that she posed a "mild or moderate risk to her children for neglect."

¶15        Dr. Rosengard opined that there was "poor potential" for Mother to parent safely.  He testified that Mother exhibited more hostility during his evaluation than he had seen "in over 90 percent" of the evaluations he has performed in the past 15 years.  Regarding her progress with Huyser, Dr. Rosengard testified that the therapy was "relatively short-lived and didn't amount to much consequentially."  He believed Mother's prognosis was worse than when he first saw her because, "the longer they're not doing well, the poorer the prognosis."  He opined that her condition would continue for a prolonged indeterminate period.

¶16        Mother herself testified she cannot presently care for her children emotionally or financially.  She agreed she is "still in the beginning stages" of managing her anger and that it would not be

appropriate to return the children if she continued having similar anger episodes, though she felt "about 75 percent" confident another episode would not occur. Mother testified that she hoped to be "in a position both mentally and financially within the next 3 to 6 months" to reunite with the children. Mother refused to commit to avoiding physical discipline, stating she would "do everything in [her] power" to control herself, but that sometimes "you're in the moment and something happens and you forget."

¶17 The juvenile court found that Mother "has a significant anger management issue that clearly puts her children at risk" and that this circumstance was likely to continue for a prolonged indeterminate period. The record supports this determination, justifying the termination of Mother's parental rights to N.S. *See In re Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) ("Leaving the window of opportunity for remediation open indefinitely is not necessary, nor do we think that it is in the child's or the parent's best interests.").

## CONCLUSION

¶18 For the foregoing reasons, we affirm the order terminating Mother's parental rights.

