NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VICTOR K.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, K.K., J.K., V.K.,
*Appellees.*

No. 1 CA-JV 20-0067
FILED 02-04-2021

Appeal from the Superior Court in Maricopa County
No. JD510435
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Devany
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge D. Steven Williams joined.

_____

**W E I N Z W E I G**, Judge:

¶1 Victor K. ("Father") appeals the juvenile court's order terminating his parental rights to J.K., K.K. and V.K. (the "Children"). Because Father has shown no error, we affirm.[1]

## FACTS AND PROCEDURAL BACKGROUND

¶2 The Department of Child Safety ("DCS") first removed the Children from Father in July 2012 based on domestic violence, substance abuse, physical abuse and sexual abuse. The court found the Children dependent as to Father, adopted a family reunification case plan, and ordered DCS to provide Father with reunification services. Father initially refused to attend individual counseling, which he felt was unnecessary, and he showed little behavioral change in parent-aid meetings.

¶3 A licensed psychologist, Dr. Al Silberman, performed a bonding and best-interests assessment in June 2014. Although he later revisited and revised his opinion, Dr. Silverman concluded the Children could live with Father without danger and DCS should reunite them. Father had shown enough progress by July 2014 for the court to return the Children to his physical custody as dependent children.

¶4 Four months after reunification, DCS was informed the Children lacked proper supervision and were exhibiting sexual behaviors. An older sister had also been physically violent with the Children. Other evidence corroborated the allegations. DCS also learned that Father was not providing J.K. and K.K. with their prescribed ADHD medication, with a report that Father was keeping the medication for himself. The court again removed the Children from Father in October 2014.

¶5 The dependency continued. V.K. was returned to Father's physical custody in December 2016, and V.K.'s dependency proceeding

_____

[1] The juvenile court terminated Mother's parental rights in May 2015; she is not a party to this appeal.

was then dismissed. The court returned J.K. and K.K. to Father in August 2018 as dependent children based on input from third-party service providers.

¶6 DCS received more allegations of abuse and neglect by Father in February 2019. The investigation corroborated the allegations, including that Father had physically abused the Children, threatened to slit their throats, and denied them food and medication. Father reportedly asked one child: "Should I kill you now? Should I strip you naked and throw you in the street for everyone to see? Should I just kill you all?"

¶7 The Children were removed from Father in April 2019. Recognizing the length of the dependency (seven years) and lack of progress, DCS moved to terminate Father's parental rights to J.K. and K.K. on statutory grounds of abuse and neglect, fifteen months time-in-care and abandonment. DCS also reinstated the dependency for V.K. and moved to contemporaneously adjudicate V.K. dependent and terminate Father's parental rights to V.K. on statutory grounds of abuse and neglect.

¶8 By then, DCS had offered Father substance-abuse treatment, substance-abuse testing, parent-aide services, two supervised-visitation-only parent aides, two psychological consultations, multiple psychological evaluations, two psychosexual evaluations, two bonding and best-interest assessments, two family therapists, two individual counselors, two family reunification teams, a child-and-family team, team decision-making meetings, and a family interventionalist.

¶9 A few months later, Dr. Silberman again examined the Children individually and diagnosed each with post-traumatic stress disorder ("PTSD") stemming from Father's physical and emotional abuse. Dr. Silberman concluded that reunification was not in the Children's best interests and recommended no visitation for Father.

¶10 The juvenile court held an eight-day severance hearing in February 2020. Father was present, represented by counsel and testified on his own behalf. The court ultimately terminated Father's parental rights to J.K. for abandonment, § 8-533(B)(1), to J.K. and K.K. for abuse and neglect, A.R.S. § 8-533(B)(2), and fifteen months time-in-care, § 8-533(B)(8)(c), and to V.K. for abuse and neglect, § 8-533(B)(2). The court also found that termination was in the Children's best interests because they were adoptable and succeeding in their placements. Father timely appealed. We have jurisdiction. A.R.S. § 8-235.

**DISCUSSION**

¶11        Father has a fundamental but not absolute right to custody of his children. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). To sever the parent-child relationship, the juvenile court must find clear and convincing evidence of at least one statutory ground under A.R.S. § 8–533(B), and must find by a preponderance of the evidence that termination is in the child's best interests. *Id.* at 249, ¶ 12. We will affirm a severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We accept the court's findings of fact unless no reasonable evidence supports them, *id.*, and view the evidence in the light most favorable to upholding the order, *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 97, ¶ 20 (App. 2009).

¶12        Father challenges the juvenile court's finding of statutory grounds to terminate his parental rights to K.K. and V.K. but does not challenge the court's finding of abandonment as to J.K. He contends the court had insufficient evidence to terminate his parental rights to K.K. and V.K. based on abuse or neglect. He also challenges the court's best interests finding for all three children.

¶13        Parental rights are terminable upon clear and convincing evidence, *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 7 (App. 2016), that a "parent has neglected or willfully abused a child," A.R.S. § 8-533(B)(2). Neglect means "the inability or unwillingness of a parent . . . to provide [the] child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). "Abuse" means inflicting or allowing another to inflict "physical injury, impairment of bodily function or disfigurement or . . . cause serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist and is caused by the acts or omissions of an individual who has the care, custody and control of a child." A.R.S. § 8-201(2).

¶14        Father has shown no error with the court's finding of abuse or neglect, A.R.S. § 8-533(B)(2), and we therefore do not examine the remaining grounds for termination. The juvenile court was presented with substantial evidence of physical and emotional abuse. The court heard testimony that Father whipped the Children, ignored sexual misconduct inflicted upon them and left the Children hungry. The record also shows that Father threatened to kill the Children and leave them naked in the

streets for "everyone to see." Father's abuse caused the Children to develop PTSD.

¶15        Father counters with record evidence he views as more favorable to his position, but this court will not reweigh the evidence or redetermine the credibility of the witnesses. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018).

¶16        Father also contends the juvenile court erroneously concluded it "only needed to consider the events from the most recent return of the children and the most recent removal[,] as this ruling negated Father's progress during the course of the case which [led] to the children's return to Father." We agree the court misstated the law, which does not limit the definition of "abuse" to events in a particular period, A.R.S. § 8-201(2), but the error was not prejudicial. Father's history with DCS would not have helped his case. And at most, the juvenile court must consider the risk of harm to non-abused children when terminating parental rights to non-abused children, unlike here. *See Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 228-29, ¶¶ 16-22 (2020). Because the record includes substantial evidence to support the juvenile court's finding of abuse and neglect as to the Children, we need not assess the court's remaining statutory grounds.

¶17        Next, the record supports the juvenile court's best-interest finding that the Children "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). If denied severance, the Children would have remained with a neglectful parent. Furthermore, the Children are adoptable and succeeding in their current placements. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). In sum, Father has shown no error in the juvenile court's best-interest determination.

**CONCLUSION**

¶18        We affirm.

