NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AMAL A., ABDULSALAM T., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, F.S., M.S., A.S., K.S., S.S., N.S.,
*Appellees*.

No. 1 CA-JV 17-0015
FILED 8-31-2017

Appeal from the Superior Court in Maricopa County
No. JD23801
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Clark Jones, Esq., Mesa
*Counsel for Appellant Mother*

David W. Bell, Mesa
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge James P. Beene joined.

---

**T H U M M A**, Judge:

¶1        Amal A. (Mother) and Abdulsalam T. (Father) challenge the superior court's order terminating their parental rights to their biological children. Because they have shown no error, the order is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Mother and Father are the parents of six children:  F.S. (born in 2003); M.S. (born in 2004); A.S. (born in 2006); K.S. (born in 2008); S.S. (born in 2012) and N.S. (born in 2013). In September 2011, the Department of Child Safety (DCS) filed a dependency petition alleging the four older children were dependent due to abuse and neglect by Mother and Father.[2] This first dependency remained open for more than four years.

¶3        The September 2011 petition alleged Mother physically abused F.S. and K.S.[3] DCS further alleged Mother was "unable to parent due to domestic violence," noting Father admitted "that Mother picks on him and that he sleeps in [the] car to avoid conflict." DCS alleged Father was "unable to parent due to failure to protect." In February 2012, as a result of a mediation, the four children were found dependent as to Mother and Father and the court adopted a case plan of family reunification.

---

[1] This court views the evidence in the light most favorable to affirming the superior court's order and will not reverse absent an error of law or unless no reasonable evidence supports the superior court's factual findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549 ¶ 7 (App. 2010).

[2] S.S. and N.S. were born while the first dependency was pending. DCS did not, during that dependency, remove S.S. or N.S. from the parents' care or file a petition alleging they were dependent children.

[3] Mother was later convicted of child endangerment involving F.S. and then placed on, and completed, probation.

¶4            DCS provided numerous services to Mother and Father during the years that followed, including parent aide services, therapeutic visitation, psychological evaluations, individual and couples counseling, housing subsidies, family reunification teams, language classes, Arabic tutors for the children, behavioral services for the children, child and family team meetings, psychiatric evaluations and, for a time, in-home behavioral coaching five times a week.

¶5            In the first half of 2013, an attempted therapeutic transition for two of the children to the parents' care was unsuccessful. In July 2013, the guardian ad litem for the children moved to stop visits between the parents and three of the children. The motion alleged that in June 2013 Mother pushed one child "into a table because she was mad at her for being bad," a chip on one of the children's teeth "appeared to be larger than" before, and that after a July 2013 visit, the children reported a variety of serious, persistent, physical and verbal abuse by the parents. The court immediately suspended visits, finding that "continued visitation with parents will endanger" the children. By October 2013, the court ordered unsupervised weekend visits for one child as directed by a therapist and therapeutic visits with the other children while, at the same time, adopting a concurrent case plan of severance and adoption.

¶6            The court returned one child to the parents' care in December 2013. In January 2014, however, Mother was arrested on a warrant for "charges of child/vulnerable adult abuse" occurring in September 2011, and the court then removed that child from the home. By September 2014, two children had been returned to the parents' care. Given behavioral issues of one of the children, however, that child was removed from the home in November 2014. By February 2015, a family reunification team had been in place and was extended. In April 2015, the court dismissed the dependency as to one child. By June 2015, the remaining three children had been returned to the parents' care. In December 2015, at the recommendation of DCS, the superior court dismissed the dependency.

¶7            Less than 60 days later, DCS filed a second dependency petition for all six children, alleging, as amended, abuse and neglect by the parents based on their inability to provide proper and effective parental care and control, including inappropriate care and supervision, physical abuse and domestic violence. In May 2016, after a contested dependency hearing, the court found the children dependent as to the parents, and in June 2016, adopted a case plan of severance and adoption.

¶8 DCS' motion to terminate alleged three grounds for both parents: (1) failure "to protect a child from neglect, so as to cause an unreasonable risk of harm to a child's health and/or welfare;" (2) willful abuse of a child or failure to protect a child from willful abuse; and (3) prior out-of-home care and subsequent removal within 18 months. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(2) & (11)(2017).[4] The motion also alleged termination was in the best interests of the children.

¶9 During a five-day contested severance adjudication in October and November 2016, the court heard from seven witnesses and received more than 20 exhibits. A DCS investigator testified about the services DCS had provided the family over the years, adding that it had provided a higher level of services "than a normal dependency matter." The investigator testified that, during the many years of the dependency proceedings, neither parent asked for "any other services." The investigator added that, during the second contested dependency adjudication, the parents acknowledged the services DCS provided, recounting their testimony that, except for services provided to one child who had behavioral health needs, "the services did not help."

¶10 Psychologist Kathryn Menendez opined that, after evaluating one of the children, it was clear that the child suffered from "physical abuse . . . and an adjustment disorder with disturbance of conduct." Menendez stated that the diagnosis stemmed from "what [the child] was experiencing in the home." She added that the best way to treat the child would be "stability of placement, structure, positive reinforcement, clear communication skills, the development of trust in [] adults [and] predictability of behavior."

¶11 Clinical Psychologist Robert Mastikian testified about his evaluations of the parents and another of the children. Mastikian diagnosed the child with "major depressive disorder, recurrent moderate secondary to a rule-out diagnosis of [Post Traumatic Stress Disorder], because of the evasiveness of his reporting, and then a borderline social functioning diagnosis because of cognitive test results," adding that "[i]t was a 99 percent probability that" the child's depression was the result of trauma in the home. Mastikian also opined that Mother suffered from other issues, including "acculturation difficulty, spouse or partner violence," and

---

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

"borderline social functioning based on her cognitive test results." Father, Mastikian opined, also suffered from "acculturation difficulties."

¶12        After considering the evidence and arguments, the superior court granted DCS's motion to terminate on all statutory grounds alleged, also finding termination was in the best interests of the children. This court has jurisdiction over the parents' timely appeals pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and 12-120.21(A) and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

¶13        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

¶14        Father and Mother first argue the superior court erred in concluding they neglected or willfully abused a child. *See* A.R.S. § 8-533(B)(2). In substance, much of the parents' argument is that the superior court improperly weighed the evidence and that specific events, taken in isolation, do not constitute abuse or neglect. But this court does not reweigh the evidence on appeal. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002) (citing cases). It is for the superior court at trial, not this court on appeal, to weigh and assess conflicting evidence. Moreover, the parents cite no authority for the proposition that the superior court could not evaluate the totality of their behavior in assessing whether DCS had proven neglect or willful abuse of a child.

¶15        As the superior court properly noted, the evidence included: (1) expert testimony that at least four of the children were neglected or abused, including evidence of physical abuse; (2) the parents failed to have at least one of the children use necessary prescription medicine or fill the child's prescriptions; (3) the parents failed to register at least some of the children for school; (4) the parents failed to ensure the children attended

school; (5) the parents failed to provide sufficient food for the children; (6) the parents would shut at least one child in a closet as a form of discipline and used "time outs" of up to two hours or more to discipline other children; (7) Mother physically struck the children, including the younger children; (8) Father threw shoes at one child and struck the younger children when they cried for a bottle; (9) the children observed physical violence between the parents; (10) Mother was convicted of child endangerment based on kicking one of the children in the face; and (11) some of the children were diagnosed with major depressive disorder, PTSD and other issues linked to emotional and physical abuse by the parents. This constitutes substantial evidence supporting the finding of neglect or willful abuse of the children. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93–94 ¶ 4 (App. 2009) (noting this court will affirm "if 'substantial evidence exists to support the [superior] court's action,' 'where there is evidence from which a reasonable [person] could draw the same conclusions,' or 'if any reasonable construction of the evidence justifies the decision'") (citations omitted).

¶16        There was, as the parents suggest, some conflicting evidence at trial. But the superior court was not required to resolve that conflict in favor of the parents, and they have not shown the court erred in considering the evidence. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004) (noting "trier of fact in a termination proceeding is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts;" this court will affirm a superior "court's findings of fact unless no reasonable evidence supports those findings and will affirm its severance order unless the order is clearly erroneous."). On this record, the parents have not shown the court erred in finding DCS proved by clear and convincing evidence that they neglected or willfully abused the children. A.R.S. § 8-533(B)(2).[5]

¶17        Given the superior court did not err in terminating parental rights based on neglect or willful abuse, this court need not address the parents' arguments addressing the A.R.S. § 8-533(B)(11) statutory ground, including that DCS failed to provide appropriate reunification services

---

[5] The parents do not challenge the superior court's best-interests finding, meaning they have waived the issue. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577 ¶ 5 (App. 2017) ("[b]y failing to challenge the time-in-care ground, Mother has abandoned and waived any contention that the court erred in granting severance on that basis.").

under that statute. *See Michael J.*, 196 Ariz. at 251 ¶ 27. But the parents' argument would fail in any event.

¶18 The parents argue DCS failed to provide "a doctorate level couples counselor of Iraqi descent to address[] the acculturation difficulties of the parents," which they now claim was the "one service that had the best hope for success in allowing the family to be reunified." The parents are correct that Mastikian suggested a couple's counselor of Iraqi descent would assist in addressing their "acculturation disorder." Mastikian, however, added that such a process would take "too long" and would "take at least a year to make some sort of progress" and "[i]t's just literally the tip of the iceberg over the year's time." Given the amount of time Mastikian testified counseling would take to make any sort of progress, he could only speculate that, if such counselling had been provided for four years, it "[p]ossibly" could have helped. Such speculation does not mean that DCS failed to provide appropriate services. DCS is not obliged "to undertake rehabilitative measures that are futile" and, instead, is obligated only to "undertake measures with a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999). In granting severance in January 2017, the superior court did not err in assessing the many services DCS provided since September 2011.

## CONCLUSION

¶19 The superior court's order terminating the parental rights of Mother and Father to F.S., M.S., A.S., K.S., S.S. and N.S. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA