NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TARA M., *Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, N.L., S.S., *Appellees.*

No. 1 CA-JV 17-0541
FILED 7-10-2018

Appeal from the Superior Court in Maricopa County
No. JD528119
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Paul J. McMurdie joined.

---

**W E I N Z W E I G**, Judge:

**¶1**        Tara M. ("Mother") appeals the superior court's order terminating her parental rights to S.S. and N.L. ("the Children"). We affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother is the biological parent of P.S., born in May 2000, S.S., born in December 2003, and N.L., born in August 2011. This appeal only considers Mother's parental rights to S.S. and N.L.

**¶3**        Mother has a long and troubled history with the Department of Child Safety ("DCS"). DCS first investigated her in 2007. According to DCS records, Mother often got "high on pain killers" and lost control; abandoned her children in the evening to visit the liquor store; and "slept throughout the day," leaving the Children hungry and unattended. Police responded to several reports of domestic abuse against Mother in 2007 and 2008, including an incident where she stabbed her boyfriend with a screwdriver as S.S. watched. Also in 2008, police found Mother unconscious in the driver's seat of her vehicle with P.S. and S.S. in the car. Mother was parked in the middle of an intersection. Her engine was still running.

**¶4**        Mother's abuse of narcotics continued in 2013 and she smoked marijuana in front of the Children. She left the Children alone at home to find drugs. At least three times in 2013 and 2014, N.L. was seen roaming the neighborhood alone in his diaper as Mother sat unconscious in her front yard. Mother asked strangers on the street, including a food delivery driver and a taxi driver, to watch N.L. as she disappeared for 15-20 minutes. Her oldest child, P.S., called police in September 2014 because Mother had threatened to commit suicide with a knife.

**¶5**        DCS visited Mother's house in October 2014. The DCS case manager found Mother outside, screaming profanities at her neighbors. N.L. again roamed the area unattended. DCS described Mother's home as filthy and mosquito-infested. P.S. appeared to be the primary caretaker for N.L., her little brother. DCS had substantial concerns about Mother's drug

abuse and addiction, unsafe and unclean home, mistreatment of the Children and failure to meet their needs. Mother also had "a habit of coaching" the Children and neighbors on what to say when DCS came knocking.

¶6 DCS petitioned the superior court to find P.S., N.L. and S.S. dependent in October 2014 and May 2015 on grounds of substance abuse, unfit home, untreated mental health issues and failure to provide appropriate care and supervision. Mother denied the allegations but submitted the issue to the superior court, which found the Children dependent in May 2015. DCS placed the Children in a licensed foster home.

¶7 The case was initially designated for family reunification. The court ordered Mother to take weekly drug tests and to complete an inpatient medical detoxification program, psychological evaluation and parent-aide services. A psychologist also recommended that Mother undergo intensive inpatient substance abuse treatment, individual counseling services for mental health issues and family therapy. Mother refused to participate in the detoxification program or intensive inpatient treatment, but agreed to outpatient substance abuse treatment through Terros, which she completed in February 2016. She did not complete the individual counseling services. Nor did she complete parent-aide services.

¶8 Mother often stumbled after the Children's removal. She missed several drug tests and failed others. Police arrested her in 2015 for false reporting and again in 2016 for criminal trespass and shoplifting. She served three months in jail. Mother encountered police twice in July 2016; first when they stopped her for driving on a suspended license and found marijuana, crushed pain pills (for snorting) and drug paraphernalia in the car; and later when police found her unresponsive on a street curb, with more marijuana. She conceded having an opiate addiction, but refused to stop taking the narcotics, explaining she needed them for pain. She was evicted from her home and unemployed.

¶9 A psychologist examined Mother in 2015 and again in 2017. Mother was diagnosed in 2017 with borderline personality disorder, mild persistent depressive disorder and various substance use disorders. Mother deflected blame for her predicament and avoided responsibility. She refused to account for past indiscretions and instead complained about being "victimized" and "treated inequitably." The psychologist concluded in 2017 that "the initial reasons [Mother's] children were brought into [DCS's] care remain and continue to pose a risk to their safety and well-being."

¶10        DCS moved to terminate Mother's parental rights to the Children in September 2016 based on time in out-of-home placement. A contested severance hearing was held in July and September of 2017. The court heard three days of evidence and argument. Mother was present, represented by counsel and testified on her own behalf. DCS presented testimony from a DCS case manager, two case aides and the psychologist who twice examined Mother. The psychologist reiterated her opinion that Mother was unable to safely parent the Children due to substance use.

¶11        In November 2017, the court terminated Mother's parental rights to S.S. and N.L. based on time in out-of-home placement. The court also found "[i]t is clearly in the Children's best interest to have Mother's rights severed so they remain in a permanent and stable home free from substance abuse, lack of supervision, and unpredictable (and dangerous) behavior."

¶12        Mother timely appealed. We have jurisdiction pursuant to Ariz. Const. art. VI, § 9 and A.R.S. § 8-235(A).

## DISCUSSION

¶13        To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and that termination is in the child's best interests by a preponderance of the evidence. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶ 12 (2000). We will affirm a severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We accept the court's findings of fact unless no reasonable evidence supports them, *id.*, and view the evidence in the light most favorable to upholding the order. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 97, ¶ 20 (App. 2009).

¶14        DCS moved to terminate Mother's parental rights to S.S. and N.L. based on time in out-of-home placement under A.R.S. § 8-533(B)(8)(c). DCS needed to prove (1) the Children were in out-of-home placement for at least fifteen months, (2) Mother "has been unable to remedy the circumstances" that necessitated removal, and (3) a "substantial likelihood" that Mother will remain incapable of providing appropriate "parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

¶15        Mother concedes that N.L. and S.S. were in an out-of-home placement for longer than fifteen months. Mother argues, however, that DCS did not prove she was unable to fix her shortcomings leading to removal or was incapable of parenting the Children in the near future. We disagree.

**¶16** The superior court received substantial evidence to support termination. DCS removed the Children from Mother's home because she could not safely parent them and abused drugs and alcohol. Those obstacles remain in place. A psychologist testified that the reasons the Children were removed "remain and continue to pose a risk to their safety and well-being." In addition, DCS offered substantial evidence of Mother's frequent run-ins with law enforcement, criminal convictions and jail time. Mother offered no contrary evidence and instead conceded her continued use of pain medication. And even if Mother uses only properly prescribed pain medication, as she argues, DCS offered evidence that the drugs frequently incapacitated her and prevented proper parenting. At bottom, the record reasonably indicated that Mother's "parenting skills and behavior remain unpredictable."

**¶17** Mother next argues that DCS did not make diligent efforts to provide Mother with "appropriate reunification services" before moving for severance on grounds of time in out-of-home placement. A.R.S. § 8-533(B)(8). Mother points to a time in 2017 when DCS "failed to offer her transportation to her intake with Lifewell," a provider of counseling services. We disagree.

**¶18** DCS must provide Mother "with the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). But Mother had the burden "to raise a timely objection" if she believed DCS had failed to provide adequate services. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 13 (App. 2014). At a minimum, she needed to object before the severance proceedings. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 349, ¶ 19 (App. 2013). She did not.[1]

**¶19** Last, Mother disputes that termination was in the Children's best interests. Severance of the parent-child relationship is in a child's best interests if the child would benefit from termination of the parental relationship or would be harmed by continuing the relationship. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). To determine a child's best interests, courts assess whether an existing placement is meeting a child's needs, the child is adoptable and an adoptive placement is immediately available. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010).

---

[1] At any rate, the record indicates that DCS offered robust family reunification services to Mother.

**¶20** The record contains ample evidence to support the court's best-interests finding. To begin, the court found clear and convincing evidence of at least one statutory ground for termination, which indicates "the interests of the parent and child diverge." *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005).

**¶21** In addition, the case manager testified that N.L. and S.S.'s current foster home was safe, stable and free of substance abuse. *Raymond F.*, 224 Ariz. at 379, ¶ 30. Moreover, the foster parents were willing to adopt N.L. and S.S. S.S. was doing well in school and socially. She wanted to be adopted. And N.L. was thriving, even with occasional behavior control issues.

**¶22** Mother's arguments are not persuasive. She claims that termination was not in the Children's best interests because she is "attentive, loving and affectionate with her children." Although we do not doubt Mother's feelings, the record provides substantial support that termination was in the Children's best interests. *See Dominique M. v. Dep't Child Safety*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016) ("The existence and effect of a bonded relationship . . . although a factor to consider, is not dispositive . . . the juvenile court [must] evaluate the totality of the circumstances . . . .").

## CONCLUSION

**¶23** We affirm the superior court's order terminating Mother's parental rights to N.L. and S.S.

