NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LAYKE H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.S., *Appellees*.

No. 1 CA-JV 20-0247
FILED 1-26-2021

Appeal from the Superior Court in Maricopa County
No. JD36529
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellees*

_____

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Lawrence F. Winthrop joined.

_____

**B A I L E Y**, Judge:

**¶1**         Layke H. ("Mother") appeals the superior court's order terminating her parental rights to her child, M.S.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         When M.S. was born on August 4, 2018, he tested positive for opiates.  The hospital staff notified the Department of Child Safety ("DCS"). DCS did not take custody of M.S. at that time but enrolled Mother in drug testing.  Mother did not participate in testing, however.

**¶3**         About five weeks later, Mother was arrested and extradited to Ohio, where she was facing fifteen pending drug-related felonies from a 2015 incident.  M.S. was still experiencing symptoms of opiate withdrawal at the time.  DCS took M.S. into temporary physical custody in October 2018.

**¶4**         A few days after removing M.S., DCS alleged he was dependent as to Mother due to neglect from Mother's substance abuse and incarceration.  About a month later, in November 2018, Mother pled guilty in Ohio to drug possession, attempted aggravated drug possession, and four counts of failure to appear.

**¶5**         Two months later, Ohio released Mother from jail, placed her on probation, and transferred supervision of her probation to Michigan.  As a condition of her probation, Mother was required to participate in outpatient substance abuse treatment and drug testing.  Her probation officer contacted her DCS case manager and reported that Mother did not begin drug treatment but had attended some Alcoholics Anonymous and Narcotics Anonymous meetings.

**¶6**         Mother eventually pled no contest to the dependency, at which time she reported she had "no intention of moving back to Phoenix." She agreed to DCS initiating a home study under the Interstate Compact on

the Placement of Children ("ICPC") regarding M.S.'s paternal grandmother in North Carolina, but she reported no intention of moving to North Carolina to care for M.S.

¶7            After a hearing, the court in February 2019 found M.S. dependent as to Mother.  A month later, DCS asked Mother to self-refer for parent-aide services, random urinalysis, and substance-abuse counseling. When Mother objected to the request that she locate the services herself, the court ordered DCS to contact child-protection authorities in Michigan to set up referrals for substance-abuse treatment, supervised televisual visits, and parent-aide services.  However, the court also found under the Adoption and Safe Families Act ("ASFA") that DCS had made reasonable efforts to offer case-management services, ICPC, parent-aide services, and substance-abuse assessment and treatment.  *See* 45 C.F.R. § 1356.21(b) (2012).

¶8            In June 2019, Ohio issued an arrest warrant for Mother because she had not complied with her probation terms.  Mother again objected to DCS's efforts to provide services, and the court ordered DCS to offer Mother reunification services notwithstanding her non-compliance with probation, but it also again entered ASFA findings that DCS had made reasonable reunification efforts.  Around this time, DCS reduced Mother's visitation because she had attended fewer than half of her scheduled visits with M.S.

¶9            As of November, DCS could not locate Mother because she had "absconded from her probation" and had failed to report to her probation officer since January 2019.  DCS had also suspended visitation entirely because Mother had attended only twelve of twenty-nine scheduled visits.  DCS also reported that although Mother was offered parenting classes, substance abuse treatment, and counseling services, she had not begun parenting classes or counseling, and DCS was "waiting for the substance abuse treatment records."

¶10           Mother was incarcerated again in mid-November in Michigan and spent the next seven months in jail.  In January 2020, DCS moved to terminate the parent-child relationship, alleging two grounds for termination: (1) six months' time-in-care, A.R.S. § 8-533(B)(8)(b); and (2) nine months' time-in-care, *id.* at (a).  In February, DCS requested to continue the termination trial because it learned Mother was in jail in Michigan. Mother again did not object to the court's ASFA findings.

¶11           After a June 17, 2020 trial, the court terminated Mother's parental rights to M.S. on both alleged grounds.

¶12        We have jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), and –2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

**DISCUSSION**

I.    Standard of Review

¶13        "We will review a juvenile court's termination order in the light most favorable to sustaining the court's decision and will affirm it 'unless we must say as a matter of law that no one could reasonably find the evidence [supporting the statutory grounds for termination] to be clear and convincing.'" *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10 (App. 2009) (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955)).

II.    Substantial evidence supports the trial court's findings.

¶14        Mother argues the superior court erred by finding: (1) DCS made a diligent effort to provide appropriate reunification services to her; and (2) Mother substantially neglected or willfully refused to remedy the circumstances that brought M.S. into DCS's care.  She does not challenge the court's best-interests finding or the findings regarding M.S.'s time in DCS's care.

¶15        To terminate a parent-child relationship, DCS must establish: (1) the grounds for termination by clear and convincing evidence; and (2) that termination is in the child's best interests by a preponderance of the evidence.  *Kent K.  v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  As relevant in this case, DCS may seek termination on the grounds "[t]hat the child is being cared for in an out-of-home placement under the supervision of . . . [DCS], that [DCS] has made a diligent effort to provide appropriate reunification services," and (a) "[t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer . . . and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement," or (b) "[t]he child who is under three years of age has been in an out-of-home placement for a cumulative total period of six months or longer . . . and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, including refusal to participate in reunification services offered by [DCS]." A.R.S. § 8-533(B)(8)(a), (b).

a. Substantial evidence supported the court's finding that DCS made a diligent effort at providing Mother reunification services.

**¶16** Mother argues DCS failed to make diligent efforts to provide her with reunification services while she was imprisoned. She acknowledges DCS provided some services but argues DCS failed to make diligent efforts to ensure those services were provided by out-of-state providers after her extradition. She also alleges DCS failed to maintain consistent contact with her and make reasonable efforts to assist her in areas where compliance proved difficult. She also argues the record does not demonstrate that providing her with reunification services would have been futile.

**¶17** Before terminating parental rights under § 8-533(B)(8)(a) and (b), DCS must "prove by clear and convincing evidence that it had made a reasonable effort to provide [the parent] with rehabilitative services or that such an effort would be futile." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49, ¶ 15 (App. 2004) (quoting *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 193, ¶ 42 (App. 1999)). DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). It need only provide the parent "the time and opportunity to participate in programs designed to help her become an effective parent." *Id.* "[P]arents who make appreciable, good faith efforts to comply with remedial programs outlined by [DCS] will not be found to have substantially neglected to remedy the circumstances that caused out-of-home placement, even if they cannot completely overcome their difficulties . . . within one year . . . ." *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). "However, when a party . . . disappears for months at a time and makes only sporadic, aborted attempts to remedy her addiction in that first year, a trial court is well within its discretion in finding substantial neglect and terminating parental rights on that basis." *Id.*

**¶18** Mother's arguments fail. She acknowledges that DCS provided drug testing for three weeks before her extradition to Ohio and visitation through a virtual video platform throughout the dependency and termination proceedings. She also acknowledges that DCS requested Mother complete substance abuse treatment and individual counseling. Despite these services being offered, the record reflects Mother failed to engage meaningfully with any of these services. Further, even if Mother had successfully begun recovery before the termination hearing, "if a trial court finds that a parent substantially neglected to remedy her addiction

during more than a year of out-of-home placement" the court may grant termination on that basis. *Id.* at 577. Substantial evidence supports the court's finding.

      b. Substantial evidence supports the court's finding that Mother substantially neglected or willfully refused to remedy the circumstances that brought M.S. into DCS's care.

**¶19** Mother argues in the alternative that the trial court erred by finding Mother substantially neglected or wilfully refused to remedy the circumstances of M.S. being in DCS's care. She argues she made a good faith effort to complete services, attended some substance abuse treatment services, and admitted she had not completely overcome the problem. She also argues DCS had a duty to notify her of its concerns if it believed her participation was deficient.

**¶20** These arguments also fail. Mother admitted she failed to remedy the circumstances that brought M.S. into care and repeatedly failed to engage with the services that would have helped her remedy these circumstances. Mother was also arrested multiple times in three different states during the dependency/termination proceedings on drug and probation-violation-related charges. Mother acknowledges she was incarcerated for thirteen of the twenty months M.S. was in care, and that M.S. remained in DCS's care as a result of her actions. Further, termination under A.R.S. § 8-533(B)(8)(a) and (b) "is not limited to those who have *completely* neglected or willfully refused to remedy such circumstances." *JS-501568*, 177 Ariz. at 576 (emphasis in original). Substantial evidence supports the court's finding.

## CONCLUSION

**¶21** Because substantial evidence supports the trial court's findings, we affirm the court's termination order.



AMY M. WOOD • Clerk of the Court
FILED:    AA