IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**BRIONNA J.**,
*Appellant,*

*v.*

**DEPARTMENT OF CHILD SAFETY, A.V.,**
*Appellees.*

No. CV-22-0158-PR
Filed August 8, 2023

Appeal from the Superior Court in Maricopa County
The Honorable Connie Contes, Judge (Ret.)
No. JD530462
**AFFIRMED**

Opinion of the Court of Appeals, Division One
253 Ariz. 271 (App. 2022)
**VACATED**

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Drew C. Ensign, Section Chief
Civil Appeals, Amanda Adams (argued), Assistant Attorney General, Toni
M. Valadez, Senior Appellate Counsel, Mesa, Attorneys for Department of
Child Safety

Edward D. Johnson (argued), Law Office of Ed Johnson, PLLC, Peoria,
Attorney for Brionna J.

David J. Euchner (argued), Pima County Public Defender's Office, Tucson,
Jamie R. Heller, Maricopa County Legal Defender's Office, Phoenix,

1

Attorneys for Amici Curiae Pima County Public Defender's Office and Maricopa County Legal Defender's Office

—————————

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES LOPEZ, MONTGOMERY, and KING joined. JUSTICE BOLICK concurred in the result.

—————————

JUSTICE BEENE, Opinion of the Court:

**¶1** The juvenile court may terminate a parent's rights if it finds by clear and convincing evidence that at least one of the statutory factors for termination exists and finds by a preponderance of the evidence that termination is in the child's best interests. A.R.S. § 8-533(B); *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 582–83 ¶ 26 (2021). Section 8-533(B)(8)(c) allows the court to terminate a parent's rights if: (1) "[t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement," (2) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement," and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."

**¶2** In this case, we consider whether the court of appeals misapplied § 8-533(B)(8)(c), exceeded the proper scope of review by independently assessing evidence presented to the juvenile court, employed an incorrect standard of review, and erroneously implied that it could dismiss the dependency finding in an appeal challenging a termination order. For the following reasons, we hold that the court of appeals erred in all these respects and ultimately erred by vacating the juvenile court's judgment terminating parental rights.

**¶3** We previously issued a decision order vacating the court of appeals' opinion and affirming the juvenile court's order. We now explain the reasoning for our decision.

2

## BACKGROUND

**¶4**        Brionna J. ("Mother") gave birth to A.V. in November 2005. From 2006 to 2013, Mother was reported numerous times to the Department of Child Safety ("DCS") for various acts of neglect and abuse regarding A.V. In November 2016, the best interests attorney for A.V. filed a dependency petition alleging that A.V. was dependent as to Mother because Mother had untreated mental health issues, a history of substance abuse and domestic violence, multiple arrests and convictions, and was reported numerous times to the child protection authorities in Georgia and Arizona.

**¶5**        Mother initially contested the dependency petition. When she failed to appear at the hearing, the juvenile court proceeded in her absence and found A.V. dependent based on the petition's allegations and the facts contained in DCS's reports.

**¶6**        During the resulting four-year dependency, DCS offered Mother numerous reunification services. These services included, among others, anger management counseling, dialectical behavioral therapy ("DBT"), a bonding and best interest assessment, parent-aide services, and supervised visitation. Mother's participation in these services was markedly inconsistent.

**¶7**        In conjunction with these services, Mother participated in multiple psychological evaluations. During Mother's first evaluation, when A.V. was eleven years old, A.V. disclosed that she feared being hurt by Mother when Mother was angry. Although the psychologist did not make any mental health diagnoses, he suspected that Mother physically and psychologically abused her daughter. Mother, however, was recommended to participate in services to increase her "frustration tolerance and ability to manage daily stressors."

**¶8**        Approximately a year later, Mother underwent a second psychological evaluation with a different psychologist. The report from this evaluation stated that a child in Mother's care "has been and could be at risk." The psychologist also concluded that it "does not appear that [A.V.] can return home" due to Mother's anger and substance abuse. He

observed that Mother may have a "personality disorder with borderline traits" and expressed concern over whether Mother could adequately parent A.V. in the future. Lastly, the report described Mother's inability to see a "need for changes in her behavior" and that she exhibited a level of "treatment motivation [that] is a great deal lower than is typical of individuals being seen in treatment settings."

¶9            Following these evaluations, DCS moved to sever Mother's parental rights under § 8-533(B)(8)(c) in January 2020, and a termination hearing was set for November 2020.

¶10            While awaiting the hearing, Mother underwent a third psychological evaluation with another, new psychologist. This evaluation reached similar conclusions as Mother's previous ones. The psychologist reported that Mother's likelihood to safely parent A.V. in the foreseeable future was "poor based on [her] failing to demonstrate adequate ability to control her emotions and behavior on a consistent basis." Specifically, the psychologist noted that Mother's failure to change her behavior provided reasonable grounds to believe that the conditions that led to A.V.'s out-of-home placement would continue. Additionally, Mother was diagnosed with a personality disorder that included antisocial, borderline, and paranoid features.

¶11            At the termination hearing, the DCS case supervisor testified that because of "Mother's behavior, her refusal to make any changes, the ongoing conflict between her and [A.V.], her ongoing conflict with service providers, [and] her inability to change her anger," A.V. could not be safely returned to Mother's care. The supervisor stated that A.V. was residing in an adoptive placement meeting all her needs, was adoptable, and that A.V., who was then fourteen, supported severance and adoption.

¶12            Mother testified that she had trouble controlling her temper in the past, had hurt A.V. by her actions, had engaged in unnecessarily cruel conversations with A.V., and failed to visit with her daughter for extended periods of time. Mother also admitted that she had not been cooperative throughout the dependency. However, she stated that she was capable of caring for her daughter and that her actions did not justify termination of

her parental rights. At the conclusion of the hearing, the juvenile court granted DCS's termination motion.

¶13 The court of appeals vacated the termination order and remanded the case to the juvenile court. *Brionna J. v. Dep't of Child Safety*, 253 Ariz. 271, 278 ¶ 32 (App. 2022). In its opinion, the court recognized it was not permitted to reweigh the evidence and that it must affirm the juvenile court's "findings if supported by reasonable evidence and inferences." *Id.* at 276 ¶ 24. However, the court also noted that it "must not affirm a clearly erroneous severance order." *Id.*

¶14 In discussing the evidence presented at the termination hearing, the court of appeals acknowledged:

> reasonable evidence supports the juvenile court's findings that Mother was initially resistant to and minimally participated in services, that she was aggressive and hostile toward providers and sometimes A.V., that she withheld visits, that she disrupted a team decision making meeting, that she and A.V. were not currently having visits due to fighting, and that she had persistent mental health diagnoses and was not amenable to therapy . . . . The evidence showed that Mother suffers from a long-term personality disorder and often fails to control her temper and act maturely, including when she interacts with or in the presence of A.V. The evidence showed that on multiple occasions, Mother treated A.V. with disrespect, told her hurtful and inappropriate things, spitefully withheld visits, and interacted belligerently with others, sometimes in A.V.'s presence.

*Id.* at 277 ¶ 28. Although the court found Mother's continuing conduct "concerning" it concluded that "the evidence did not establish that [Mother] was unfit" and that "even accepting all of the juvenile court's findings of fact, we must hold that the state failed to meet its burden to justify severance under § 8-533(B)(8)(c) and that the juvenile court clearly erred." *Id.* at 277–78 ¶ 28.

¶15        The court of appeals then discussed the dependency order, stating that "when the record establishes that a parent is fit, the proper remedy is dismissal of the dependency." *Id.* at 278 ¶¶ 30–31. However, the court stopped short of dismissing the dependency because the "record does not compel us to conclude that the dependency was baseless ab initio." *Id.* ¶ 30. Consequently, the court remanded the case to the juvenile court so that it "may evaluate whether continuing government oversight serves A.V.'s best interests." *Id.* ¶ 31.

¶16        We granted review because this case presents recurring issues of statewide concern. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

¶17        The interpretation of § 8-533 presents a question of law, which is reviewed de novo. *See Am. C.L. Union of Ariz. v. Dep't of Child Safety*, 251 Ariz. 458, 461 ¶ 11 (2021).

### A.

¶18        Parents enjoy a fundamental liberty interest in "the care, custody, and management" of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). However, the state possesses a vital interest in the ongoing status of the parent-child relationship. *See, e.g.*, *In re Maricopa Cnty. Juv. Action No. JD-561*, 131 Ariz. 25, 27–28 (1981). As such, the state has the power to "intrude into the parent-child relationship to protect the welfare of the child and the state's own interest in the welfare of its citizens." *Id.* A juvenile court may terminate parental rights under certain circumstances, "so long as the parents whose rights are to be severed are provided with 'fundamentally fair procedures' that satisfy due process requirements." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 24 (2005) (quoting *Santosky*, 455 U.S. at 754).

¶19        Due process requires that the parent-child relationship not be terminated unless the parent is unfit as a matter of law. *See Santosky*, 455

U.S. at 760–61. The process of evaluating the facts of a case through the lens of Arizona's severance statute, § 8-533(B), provides the appropriate due process protections when the state seeks to terminate parental rights. *Jessie D.*, 251 Ariz. at 579 ¶ 8. This Court has explicitly "equated the substantive grounds for termination listed in § 8-533(B) with parental unfitness." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 9 (2018); *see also Kent K.*, 210 Ariz. at 285–86 ¶¶ 31–32.

**¶20** Section 8-533(B) lists the grounds sufficient to justify the termination of the parent-child relationship and dictates that "in considering any of the following grounds, the court shall also consider the best interests of the child." To determine whether a parent-child relationship may be properly terminated, the juvenile court conducts a two-step inquiry. *See Alma S.*, 245 Ariz. at 149 ¶ 8. "First, the juvenile court must find by clear and convincing evidence that a statutory ground for termination exists" under § 8-533(B). *Id.* After the statutory ground for termination has been shown to exist, "the court must [then] determine by a preponderance of the evidence that severance is in the child's best interests." *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 227 ¶ 12 (2020).

**B.**

**¶21** Here, DCS moved to terminate Mother's parental rights under § 8-533(B)(8)(c). To sever a parent's rights under this statute, the juvenile court must find by clear and convincing evidence that: (1) A.V. had been in an out-of-home placement for a cumulative total period of at least fifteen months; (2) DCS had made a diligent effort to provide appropriate reunification services; (3) Mother had been unable to remedy the circumstances that caused A.V. to be in an out-of-home placement; and (4) there was a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control in the near future. § 8-533(B)(8)(c).

**¶22** Mother concedes that A.V. was in an out-of-home placement for more than fifteen months and that DCS made a diligent effort to provide appropriate reunification services. She contests the sufficiency of the evidence to support the juvenile court's findings that she was unable to remedy the circumstances that led A.V. to be in an out-of-home placement

and that she would not be capable of exercising proper and effective parental care and control in the near future.[1]

¶23        As noted above, the juvenile court granted DCS's motion to terminate under § 8-533(B)(8)(c).  In addressing the question of whether Mother was unable to remedy the circumstances that caused A.V. to be in an out-of-home placement, the juvenile court found that at the onset of the dependency action, "Mother was very resistant to services and participated minimally."   The court then found that Mother's refusal to engage in services persisted throughout the four-year dependency by her "volatile and disruptive behaviors with [service] providers."

¶24        Next, when addressing the question of whether there was a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control of her daughter in the future, the juvenile court found that "Mother's mental health condition and diagnoses have persisted for more than four years" and "Mother is not amenable to therapy to make necessary behavioral changes."   Accordingly, the court concluded that "Mother has demonstrated she is unable and/or unwilling to appropriately regulate her emotions and safely and effectively parent her daughter."

¶25        In reviewing the juvenile court's findings, the court of appeals listed the elements that must be established to terminate parental rights under § 8-533(B)(8)(c).  *See Brionna J.*, 253 Ariz. at 277 ¶ 25.  However, it failed to examine the circumstances that caused A.V. to be in an out-of-home placement and if there was a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control of her daughter in the near future.  Instead of addressing these specific elements of § 8-533(B)(8)(c), the court of appeals summarily concluded that "even accepting all of the juvenile court's findings of

---

[1] Mother does not challenge the court's best interests finding on appeal, and accordingly we do not address it.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 13 (2000).

fact . . . the state failed to meet its burden to justify severance" and "the juvenile court clearly erred." *Id.* at 277–78 ¶ 28.

**¶26** In conducting its review, the court of appeals must evaluate all the statutory elements found by the juvenile court. *See Juv. Action No. JD-561*, 131 Ariz. at 27 (concluding that parental rights may not be changed without "strict compliance with the statutes involved"). And while we agree with the court of appeals that "[s]everance is not a general-application tool that allows the state to regulate bad parenting," *Brionna J.*, 253 Ariz. at 278 ¶ 29, we disagree that it properly addressed the requirements of the statute with its cursory conclusion that Mother was not "unfit as a matter of law." *Id.* The court of appeals' failure to examine each element contained in the statutory ground for termination was error.

**¶27** Additionally, the court of appeals seemed to conflate seeking severance under § 8-533(B)(8)(c) with terminating a parent's rights based on neglect or abuse under § 8-533(B)(2) or mental illness under § 8-533(B)(3). *Id.* In discussing its reasons for vacating the juvenile court's termination order, the court concluded that "[t]he evidence established that Mother was mentally ill, volatile, and unkind, but it did not establish that she was unfit as a matter of law." *Id.* The court noted that DCS "did not allege emotional abuse by Mother, and . . . severance was never sought based on neglect or abuse under § 8-533(B)(2), or on mental illness under § 8-533(B)(3)." *Id.* Section 8-533(B)(8)(c), however, does not require these circumstances to be found separately to support a termination under the statute. The elements of § 8-533(B)(8)(c) may be established with evidence of neglect, abuse, or mental illness without the necessity of alleging the grounds for severance under § 8-533(B)(2) or (3). As we concluded in *Alma S.*, § 8-533(B)(8) is a proxy for parental unfitness as a matter of law because it demonstrates a parent's inability to properly parent his or her child. 245 Ariz. at 150 ¶ 10; *see also Santosky*, 455 U.S. at 760–61. Thus, to the extent that the court of appeals imposed an additional showing of parental unfitness outside § 8-533(B)(8)(c)'s elements, it misinterpreted the statute.

**II.**

¶28            The court of appeals also erred when it exceeded the proper scope of review by reweighing the evidence presented to the juvenile court.

¶29            In two recent opinions that set forth the standard of review in termination cases, this Court stated that a reviewing court should "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022); *see also Jessie D.*, 251 Ariz. at 579–80 ¶ 10.   While this standard is legally correct, the imprecise language used in our previous cases may have caused the court of appeals to inadvertently combine the distinct factual and legal review that must be conducted when reviewing a termination order.   To allay possible confusion, we clarify the standard of review before applying it here.

¶30            A juvenile court's termination order must be reviewed under a two-part analysis.   First, the appellate court will review the factual findings made by the juvenile court, and its factual findings will be accepted "if reasonable evidence and inferences support them." *See Jessie D.*, 251 Ariz. at 580 ¶ 10 (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3 ¶ 9 (2016)).   This deferential standard is warranted "[b]ecause the juvenile court is in the best position to weigh evidence and assess witness credibility."   *Id.* at 579 ¶ 10 (quoting *Demetrius L.*, 239 Ariz. at 3 ¶ 9).

¶31            Second, the juvenile court's legal conclusions regarding the statutory ground for termination—which must be established by "clear and convincing" evidence at the juvenile court level—will be affirmed unless they are clearly erroneous. *Id.* at 580 ¶ 10, 582–83 ¶¶ 26–27.   In making this determination, the question of whether the statutory factor is supported by the mandated quantum of evidence will not be disturbed unless the appellate court determines "as a matter of law that no one could reasonably find the evidence to be clear and convincing." *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955) (quoting *Paulsen v. Coombs*, 253 P.2d 621, 624 (Utah 1953) (Crockett, J., concurring in part and dissenting in part)).   This approach to reviewing a termination order ensures that the appropriate deference is afforded to the juvenile court's factual findings while maintaining the

appellate court's role in properly reviewing the juvenile court's legal conclusions.

¶32 Turning to the facts in this case, viewing the record in the light most favorable to upholding the juvenile court's findings and applying our deferential standard of review, we conclude the court of appeals erred in failing to adhere to these standards and instead incorrectly reweighed the evidence presented at the termination hearing.

¶33 As previously mentioned, the juvenile court found that Mother displayed volatile and disruptive behaviors toward A.V. throughout the four-year dependency. Additionally, Mother's long-term and well-documented personality disorders made it impossible for her to parent A.V. in a reliable and competent manner. Mother was also not amenable to therapy to make the necessary behavioral changes and admitted that she engaged in services to satisfy the juvenile court—not to improve her ability to parent her daughter.

¶34 Despite this uncontroverted evidence, the court of appeals asserted, without analysis, that it did not agree "that the facts warranted the conclusion that Mother was unable to 'safely and effectively parent [A.V.].'" *Brionna J.*, 253 Ariz. at 277 ¶ 28. Failing to agree with the juvenile court's factual findings, however, is not the appropriate standard. The court of appeals incorrectly reweighed the evidence presented at the termination hearing to arrive at its conclusion.

¶35 Regarding the statutory ground for termination, the juvenile court determined the state proved § 8-533(B)(8)(c)'s elements by clear and convincing evidence because the evidence presented established that "Mother has demonstrated she is unable and/or unwilling to appropriately regulate her emotions and safely and effectively parent her daughter." The court of appeals rejected this conclusion and, again without analysis, stated that it did not agree "that the statutory ground was proved by clear and convincing evidence." *Id.* at 278 ¶ 29. This type of perfunctory finding does not comport with the level of appellate review required in termination cases. *See Juv. Action No. JD-561*, 131 Ariz. at 27 (concluding that parental

rights may not be changed without "strict compliance with the statutes involved").

**¶36** In sum, reasonable evidence supports the juvenile court's factual findings, and the juvenile court did not clearly err in determining that the statutory ground for termination was proven by clear and convincing evidence.

**¶37** Amici Pima County Public Defender's Office and Maricopa County Legal Defender's Office assert that we should adopt a de novo standard when reviewing the sufficiency of evidence underlying the grounds for termination. This argument, however, would expand the issues on appeal and address an argument not made by either party. As such, we decline to address it. *See Vangilder v. Ariz. Dep't of Rev.*, 252 Ariz. 481, 493 ¶ 46 (2022) (explaining that "[b]ecause '[a]micus curiae will not be permitted to create, extend, or enlarge the issues' on appeal, we need not resolve" the issues that the parties did not present for review (second alteration in original) (quoting *City of Phoenix v. Phx. Civic Auditorium & Convention Ctr. Ass'n*, 99 Ariz. 270, 274 (1965))).

## III.

**¶38** Finally, the court of appeals implied that it had the authority to dismiss an underlying dependency finding in an appeal vacating a juvenile court's termination order. *Brionna J.*, 253 Ariz. at 278 ¶¶ 30–31. We disagree.

**¶39** As an initial matter, the validity of the juvenile court's dependency order was not before the court of appeals. An appellate court's jurisdiction is limited to a party's notice of appeal or cross-appeal. *See, e.g.*, A.R.S. § 12-120.21(A)(1); ARCAP 8(a)–(b); *Lee v. Lee*, 133 Ariz. 118, 124 (App. 1982) ("The court of appeals acquires no jurisdiction to review matters not contained in the notice of appeal.").

**¶40** Here, the dependency finding was not identified in Mother's notice of appeal, and she only sought review of the termination order. Consequently, the court of appeals' jurisdiction was limited to the issue contained in Mother's notice of appeal. If a parent seeks to challenge the

circumstances that caused removal of a child from his or her care, that action should be either instituted during the dependency proceeding or included in the notice of appeal of a termination order.

**¶41** Although Mother did not seek review of the juvenile court's dependency finding, the court of appeals nonetheless implied that it had the authority to dismiss the dependency when it vacated the termination order. *See Brionna J.*, 253 Ariz. at 278 ¶¶ 30–31. The court of appeals' reliance on *Donald W. v. Department of Child Safety*, 247 Ariz. 9, 18–19 ¶¶ 27–30 (App. 2019), as support for this putative power is misplaced.

**¶42** In *Donald W.*, a father's rights to his child were terminated under § 8-533(B)(8)(c). *Id.* at 17 ¶ 25. In contrast to the dearth of analysis displayed in examining the statutory ground for termination in this case, the *Donald W.* court examined each of the findings under § 8-533(B)(8)(c) and vacated the termination order because of the "complete absence of evidence in the record to support the juvenile court's findings and conclusions supporting the termination." *Id.* at 28 ¶ 82. Although it concluded that the juvenile court's dependency finding was based on insufficient evidence, *see id.* at 18 ¶ 27, the court of appeals did *not* dismiss the dependency when it vacated the termination order. *See id.* at 28 ¶ 82.

**¶43** Here, the court of appeals misconstrued *Donald W.* and erred when it insinuated that it had the authority to dismiss a dependency finding after vacating a termination order. *See Brionna J.*, 253 Ariz. at 278 ¶¶ 30–31. To the contrary, if the court of appeals vacates a termination order, the dependency finding remains in effect and the matter should be remanded to the juvenile court so that it may review whether the child continues to be dependent. *See* A.R.S. § 8-847(A) ("After the [dependency] disposition hearing, the court shall hold periodic review hearings at least once every six months . . . ."); *see also* Ariz. R. P. Juv. Ct. 341(a) ("Pursuant to A.R.S. § 8-847, the court must conduct periodic review hearings at least once every 6 months after the disposition hearing to review the progress of the parties in achieving the case plan goals and determine whether the child continues to be dependent.").

¶44 In concurring with the result in this case, Justice Bolick continues his long-standing criticism of Arizona's process for terminating parental rights. *Infra* ¶ 49. Here, our colleague denounces the standard used to review the juvenile court's finding regarding the statutory ground for termination by asserting that this standard does not satisfy due process requirements. With all due respect, our colleague's critique is misplaced.

¶45 The Arizona Legislature has already codified *Santosky*'s holding. The Supreme Court in *Santosky* held that "due process requires that the State support its allegations [regarding the statutory ground for termination] by at least clear and convincing evidence." 455 U.S. at 748. In response, our legislature amended A.R.S. § 8-537(B) to require the state to prove the statutory grounds for termination by clear and convincing evidence. 1983 Ariz. Sess. Laws ch. 176, § 3 (1st Reg. Sess.). Thus, since the 1983 amendment, parents' due process rights have been vindicated when juvenile courts apply this heightened evidentiary standard and appellate courts review termination rulings to ensure the state has met this standard.

¶46 As previously noted, this Court's jurisprudence about how an appellate court should review a juvenile court's legal conclusion regarding the statutory ground for termination has been less than precise. *Supra* ¶ 29. In this case, we reiterate the well-established principle that a juvenile court's legal conclusion that a statutory ground for termination has been proven by clear and convincing evidence will be affirmed unless "clearly erroneous." *Jessie D.*, 251 Ariz. at 580 ¶ 10, 582–83 ¶¶ 26–27. In clarifying what "clearly erroneous" means, we unremarkably reiterate that this finding will be affirmed unless the appellate court determines "as a matter of law that no one could reasonably find the evidence to be clear and convincing." *Murillo*, 79 Ariz. at 9 (quoting *Paulsen*, 253 P.2d at 624 (Crockett, J., concurring in part and dissenting in part)). For nearly seventy years, beginning with *Murillo*, this Court has consistently concluded that this is the appropriate standard of review for a decision that must be based on clear and convincing evidence. *See Stevenson v. Stevenson*, 132 Ariz. 44, 46 (1982); *King v. Uhlmann*, 103 Ariz. 136, 142 (1968).

¶47 This well-accepted legal principle is hardly evanescent, and the clarified standard set forth herein simply provides guidance to

appellate courts tasked with a consequential yet narrow duty in reviewing termination cases.

## CONCLUSION

**¶48**      For the foregoing reasons, we vacate the court of appeals' opinion and affirm the juvenile court's judgment terminating Mother's parental rights.

BOLICK, J., concurring in the result:

**¶49** I agree with my colleagues that grounds for termination of parental rights were clearly established here and that the court of appeals impermissibly reweighed the very strong evidence to reach a different result. I therefore join the Court in affirming the trial court's well-grounded opinion. However, the standard adopted by the Court for appellate review of a trial court's findings in termination proceedings further eviscerates already emaciated parental rights in Arizona and therefore I cannot join the opinion.

**¶50** Parental rights are fundamental. I cannot say it better than our statute: "The liberty of parents to direct the upbringing . . . of their children is a fundamental right." A.R.S. § 1-601(A). This right is firmly embodied in our Constitution, *see, e.g.*, *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399–400 (1923), and of course fully applies when the state takes the ultimate step of terminating that right. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing that parents have a fundamental liberty interest in "the care, custody, and management of their child" that "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State").

**¶51** The state's decision to impair a fundamental right is subject to strict judicial scrutiny. *See, e.g.*, *Students for Fair Admissions v. President & Fellows of Harvard College*, 143 S. Ct. 2141, 2166 (2023). That too is expressed in statute. "This state, any political subdivision of this state or any other governmental entity shall not infringe on these rights without demonstrating that the compelling governmental interest as applied to the child involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means." § 1-601(B).

**¶52** But this Court's decisions applying statutes and rules in the termination context often fall far short of this standard. In past cases, I have written or joined opinions that are critical of the Court's failure to provide essential substantive and procedural protections for parental rights. *See, e.g.*, *Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 92–101 ¶¶ 33–73 (2019) (Bolick, J., dissenting); *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 152–56 ¶¶ 24–39 (2018) (Bolick, J., concurring in result); *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 449–51 ¶¶ 44–54 (2018) (Timmer, J., and Bolick, J.,

dissenting in part and concurring in part); *Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 59–64 ¶¶ 33–66 (2017) (Eckerstrom, J., Bolick, J., and Gould, J., dissenting).

**¶53** In this opinion, as in all our recent cases, the Court gives an obligatory nod to *Santosky* and its recognition of fundamental parental rights. *Supra* ¶ 18. But then it further weakens the already fragile protections for parental rights in Arizona by according virtually conclusive effect to the trial court's findings regarding whether the statutory standard for termination is met.

**¶54** The Court notes that in past cases we have stated that a reviewing court should "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Supra* ¶ 29 (quoting *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022) (citing *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579–80 ¶ 10 (2021))). I agree that we appropriately defer to a trial court's factual findings given it is in the best position to determine witness credibility and evidence. However, here the Court "clarifies" that standard in a way that renders appellate review not merely deferential, but evanescent.

**¶55** The Court here adopts a two-part appellate review standard. First, the trial court's factual findings are accepted if reasonable evidence and inferences support them. *Supra* ¶ 30. Second, the trial court's legal conclusions regarding the statutory grounds for termination, which must be established by "clear and convincing evidence," must be affirmed unless clearly erroneous. *Supra* ¶ 31. Going further, the Court explains that the trial court's determination that the evidence was clear and convincing is clearly erroneous only if "the appellate court determines 'as a matter of law that no one could reasonably find the evidence to be clear and convincing.'" *Supra* ¶ 31 (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955)).

**¶56** This "standard" that the Court adopts is impossible to flunk. If a trial judge has found it to be satisfied, and the attorneys are presumed to honor their oath to present only such evidence they deem meritorious, how can "no one" reasonably consider the evidence to be clear and convincing?

¶57     Nor is the matter to which this rubber stamp is directed inconsequential.  To the contrary, it is directed to the mixed question of fact and law "of whether the statutory factor is supported by the mandated quantum of evidence."  *Supra* ¶ 31.  Given, as the Court acknowledges, that proving the statutory ground establishes parental unfitness as a matter of law, *supra* ¶ 19, this determination is central to the disposition and should not be reflexively ratified by the reviewing court.

¶58     I grant that the Court has applied this standard in other contexts.  But neither a contested realty trust, *Murillo*, 79 Ariz. at 6–7, nor property division after divorce, *Stevenson v. Stevenson*, 132 Ariz. 44, 46 (1982), are issues with momentous constitutional ramifications.  If we really believe there are fundamental rights involved, we need to ratchet due process protections up, not down.

¶59     So, our termination of parental rights regime looks like this.  A final termination can be effectuated at a truncated hearing that was never intended for that purpose.  *Marianne N.*, 243 Ariz. at 57 ¶ 21.  Proving a statutory ground for termination creates an irrebuttable presumption of parental unfitness.  *Timothy B.*, 252 Ariz. at 480 ¶ 44 (Bolick, J., concurring in result).  After today, a trial court's determination that the statutory ground is proven by clear and convincing evidence is largely unreviewable.  A parent's fundamental rights, to the extent they are considered at all, are improperly relegated to the subsequent inquiry regarding the child's best interests.  *Alma S.*, 245 Ariz. at 154–155 ¶ 34 (Bolick, J., concurring in result).  I stand by my previous depiction of the parental rights termination process as "a railroad with no stops and only one destination, in which judges act as mere conductors."  *Alma S.*, 245 Ariz. at 153 ¶ 28 (Bolick, J., concurring in result).

¶60     For the foregoing reasons, I agree with my colleagues as to the result here, but, with great respect, not with the overarching jurisprudential framework that we continue to apply.